**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Annick M. Persinger (State Bar No. 272996)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
       apersinger@bursor.com

**VOZZOLO LLC**
Antonio Vozzolo (*pro hac vice* to be filed)
345 Route 17 South
Upper Saddle River, New Jersey 07458
Phone: 201-630-8820
Fax: 201-604-8400
avozzolo@vozzolo.com

*Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELANIE BARBER, KI BURKE, and JOSEPH GREGORIO on Behalf of Themselves and all Others Similarly Situated, <br><br>           Plaintiffs, <br><br>     v. <br><br> JOHNSON & JOHNSON, MCNEIL-PPC, INC., JOHNSON & JOHNSON CONSUMER, INC., and RANIR LLC, <br><br>           Defendants. | Case No.  8:16-cv-1954 <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

1    Plaintiffs Melanie Barber, Ki Burke, and Joseph Gregorio ("Plaintiffs"), on

2  behalf of themselves and all others similarly situated, make the following allegations

3  against defendants Johnson & Johnson, McNeil-PPC Inc., Johnson & Johnson

4  Consumer Inc., and Ranir LLC (collectively, the "Defendants").  Plaintiffs'

5  allegations are based on the investigation of their counsel and upon information and

6  belief, except as to allegations specifically pertaining to themselves and their

7  counsel, which are based on personal knowledge.

8                              **NATURE OF ACTION**

9        1.    To capitalize on consumer demand for whiter teeth, Defendants make

10 false and misleading representations about their Deeply White + peroxide toothpaste,

11 and their Deeply White + peroxide mouthwash (the "Deeply White Products," or the

12 "Products").   Since Defendants know that sales in the whitening category of oral

13 care products are over two billion a year and continuing to grow, Defendants use

14 "Deeply Whitening" representations to sell the Deeply White Products at a premium

15 price.   Defendants make false and misleading whitening claims with one goal in

16 mind – reaping enormous profits at the expense of unsuspecting consumers.

17       2.    Specifically, Defendants claim that the Deeply White Products

18 effectively deeply whiten teeth, effectively go beyond surface stain removal to

19 deeply whiten teeth, provide superior whitening, and contain the same whitening

20 ingredient that dentists use.  But the Deeply White Products cannot deeply whiten

21 teeth, do not go below surface stain removal, do not provide superior whitening, and

22 contain only a trace amount of the peroxide that dentists use.

23       3.    Peroxide in Rembrandt Deeply White toothpaste and mouthwash cannot

24 deeply whiten teeth for several reasons.  First, the peroxide in the Products does not

25 stay on teeth for long enough.  Second, the peroxide in the Products is not in close

26 enough proximity to teeth because there is no dental tray or strip to hold the peroxide

27 on teeth.  Third, the Products do not contain enough peroxide to reach the dentin

28

layer of teeth.  Thus, the peroxide in the Deeply White Products does not function as a whitening agent on intrinsic stains.

4.     Defendants' marketing campaign involves numerous false and misleading statements, as well as omissions of material fact, concerning the Products that have injured Plaintiffs and the Class by inducing them to purchase premium priced products.

5.      Because Plaintiffs and others like them were taken in by Defendants' false promise of deeper whitening, Plaintiffs bring this class action against Defendants to seek a reimbursement of the premium Plaintiffs and the class members paid based on Defendants' representations that the Deeply White Products are capable of deep whitening.

6.     Plaintiffs seek relief in this action individually and on behalf of all purchasers of the Deeply White Products for breach of express and implied warranties.  Plaintiffs Barber and Burke also seek relief in this action individually and on behalf of purchasers of Deeply White Products in California for violation of Civil Code §§ 1750, *et seq.*, the California Consumer Legal Remedies Act ("CLRA"), Bus. & Prof. Code §§ 17200, *et seq.*, California's Unfair Competition Law ("UCL"), and Bus. & Prof. Code §§ 17500, *et seq.*, California's False Advertising Law ("FAL").  Plaintiff Joseph Gregorio also seeks relief in this action individually and on behalf of purchasers of Deeply White Products in New York for Defendants' violations of New York Gen. Bus. Law § 349, and New York Gen. Bus. Law § 350.

## THE PARTIES

7.     Plaintiff Melanie Barber is a resident of Lake Forest, California. Beginning in or around the fall of 2015, Ms. Barber regularly purchased Rembrandt Deeply White + peroxide toothpaste from several retailers, including Walgreens, CVS, and Rite Aid.  Ms. Barber purchased Rembrandt Deeply White + peroxide toothpaste based on the "Deeply White" name of the toothpaste, as well as claims on

the label that the toothpaste whitens deeper, that peroxide would provide superior whitening, that the toothpaste would go below the surface to remove deep stains, that the toothpaste goes beyond surface stain whitening, and that it contained the same ingredient that dentists use.  She would not have purchased Rembrandt Deeply White + peroxide toothpaste if the label had not stated that it would deeply whiten her teeth.  Ms. Barber used Rembrandt Deeply White + peroxide toothpaste as directed for six months but stopped using it because she did not notice any changes on the deeper stains on her teeth.

8.      Plaintiff Ki Burke is a resident of San Pedro, California.  Beginning in or around the summer of 2015, Ms. Burke regularly purchased Rembrandt Deeply White + peroxide toothpaste and Rembrandt Deeply White + peroxide mouthwash. Ms. Burke purchased the Products from several retailers, including CVS, Walgreens, and Walmart.  Ms. Burke purchased the Rembrandt Deeply White Products based on claims on the labels, including but not limited to, that they contained the same whitening ingredient that dentists use, that they would remove deep stains, and that they would whiten her teeth deeper.  She would not have purchased the Rembrandt Deeply White Products if the labels had not stated that they would deeply whiten her teeth and that they contained the same ingredient that dentists use.  Although she used the Deeply White Products for about a year, the Deeply White Products did not deeply whiten her teeth, or affect any of the intrinsic stains on her teeth.

9.      Plaintiff Joseph Gregorio is a resident of New York, New York.  Mr. Gregorio purchased Rembrandt Deeply White + peroxide toothpaste eight or nine times during the past few years.  Mr. Gregorio purchased Rembrandt Deeply White from several retailers, including Bed Bath & Beyond, Duane Reade, and Walgreens. Mr. Gregorio purchased Rembrandt Deeply White + peroxide toothpaste based on statements on the labels, including but not limited to that, it would whiten intrinsic stains, would go beyond surface stain whitening, whiten deeper, and that it contained active dental peroxide – the same whitening ingredient that dentists use.  He would

not have purchased Rembrandt Deeply White + peroxide toothpaste if the labels had not claimed that it would go beyond surface stain removal, that it would whiten deeper stains, and that it contained the same ingredient that dentists use.  Even though Mr. Gregorio used Rembrandt Deeply White + peroxide toothpaste as directed, it didn't work to deeply whiten his teeth.

10.    Defendant Johnson & Johnson is a New Jersey corporation with its principal place of business at One Johnson Plaza, New Brunswick, New Jersey 08933.  Johnson & Johnson is a multinational corporation engaged in the manufacture and sale of medical devices, pharmaceuticals, and consumer goods. Johnson and Johnson is engaged in the business of manufacturing, mass marketing, and distributing Deeply White Products throughout the United States.

11.    Defendant McNeil-PPC, Inc. is a subsidiary of Defendant Johnson & Johnson that is organized under the laws of New Jersey with its principal place of business at 199 Grandview Road Skillman, New Jersey 08558.  McNeil -PPC also maintains its headquarters at 7050 Camp Hill Road, Fort Washington, Pennsylvania. Defendant McNeil-PPC, develops, produces and markets oral healthcare products, including the Deeply White Products.

12.    Defendant Johnson & Johnson Consumer Inc. is a New Jersey corporation with its headquarters and principal place of business at 199 Grandview Road Skillman, New Jersey 08558.  Defendant Johnson & Johnson Consumer Inc., develops, produces and markets oral healthcare products, including the Deeply White Products.

13.    Defendants Johnson & Johnson, McNeil-PPC, Inc., and Johnson & Johnson Consumer Inc., are collectively referred to herein as Johnson & Johnson.

14.    Defendant Ranir, LLC ("Ranir") is a Delaware limited liability company with its principal place of business at 4701 East Paris Avenue SE, Grand Rapids, Michigan 49512.  Ranir is a leading global manufacturer of store brand oral care products and value branded oral care products sold under the Plackers

trademark.  In July of 2016, Ranir acquired Rembrandt from Defendant Johnson & Johnson.

15.     At all relevant times, each of the Defendants acted jointly to perpetrate the acts described herein.   At all relevant times alleged in this matter, each Defendant acted in concert with, with the knowledge and approval of and/or as the agent of the other Defendant within the course and scope of the agency, regarding the acts and omissions alleged.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)  because there are more than 100 Class Members, the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from at least one Defendant.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants do business throughout this District, Plaintiffs Burke and Barber reside in this District, Plaintiffs Burke and Barber purchased the Deeply White Products several times in this District, and the Deeply White Products are sold extensively in this District.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### A.     Rembrandt's False and Misleading Labels and Advertising

18.     Although Defendants prominently boast that they "introduced the REMBRANDT® Deeply White™ collection to push boundaries and redefine white," they in fact pushed right through the boundaries of truthful advertising.

19.     As shown below, Defendants make the following false and misleading representations on the labels of Rembrandt Deeply White + peroxide toothpaste:

- "Deeply White"
- "Whitens Deeper"
- "Peroxide Toothpaste Formulated for Superior Whitening"

- "Goes beyond surface stain whitening, to a radiant smile that shines from the inside and out"
- "Tooth discoloration is caused by two types of stains – surface stains, and deep stains.  Unlike most whitening toothpastes, which only whiten on the surface, this daily-use deep whitening formula is expertly designed to provide double whitening action – ON THE SURFACE: gently polishes away surface stains without scratching the enamel – BELOW THE SURFACE: safely whitens below the enamel to help remove deep stains where they start"
- "Active Dental Peroxide – the same enamel-safe whitening ingredient that dentists use"







1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28









20.    As shown below, Defendants make the following false and misleading representations on the labels of Rembrandt Deeply White + peroxide mouthwash:

- "Deeply White"

- "Deeply Whitens"

- "Fluoride Mouthwash Designed for Superior Whitening"

-  "Deeply Whitens with the same enamel-safe ingredient dentists use"

- "Go beyond surface whitening, to a radiant smile that shines from the inside out"



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



18    21.    Defendants also omitted that dental strips, dental trays, and professional

19  whitening all provide superior whitening.  Defendants further omit that Deeply

20  White Products provide no more whitening than other whitening toothpastes and

21  mouthwashes.  Defendants also omit that the peroxide in Deeply White products is

22  only an iota of the peroxide that dentists use.

**B.    Defendants Make Substantially Similar Representations in Marketing
        Materials to Drive Customers to the Labeling Representations on the
        Shelf**

23

24

25    22.    Defendants make representations on the Rembrandt website that are

26  substantially similar to the ones they make on the Product labels that every purchaser

27

28

sees at the shelf. [1]  For example, the Rembrandt website provides an illustration on how the peroxide in the Deeply White Products supposedly penetrates the enamel to reach the dentin layer of a tooth:



---

[1]  http://www.rembrandt.com/teeth-whitening/how-rembrandt-whitening-works.html (last visited October 26, 2016)

23.     Defendants also make similar misrepresentations on the Rembrandt website about Deeply White + peroxide mouthwash.[2]  Defendants explain that liquid peroxide "starts working on contact to get to the intrinsic (deep) stains to visibly whiten teeth":



24.     Defendants also utilize online videos and commercials to reinforce the false labeling message that Rembrandt Deeply White Products deeply whiten teeth. For example, the following commercial, which aired nationwide and on various networks,[3] shows two men wearing lab coats while scrubbing yellow graffiti off the surface of a giant tooth to depict how other over-the-counter whitening products clean off surface stains.  After the surface stains have been scrubbed off, "DEEP STAINS" are left inside the tooth.  Then, the commercial illustrates how the Deeply White Products purportedly target the deeper stains in the dentin layer of teeth.  A

[2] http://www.rembrandt.com/teeth-whitening-products/whitening-mouthwash.html (last visited October 26, 2016)

[3] For example, the commercial aired on Dateline NBC, and/or the Today Show, and/or on Late Night with Jimmy Fallon on July 3rd, 4th, 7th, 9th, and 15th of 2011; August 5th, 15th, and 31st of 2011; and September 2 and 23rd of 2011.

voice over explains that the Deeply White Products use "the same enamel safe whitening ingredient dentists use to noticeably whiten teeth from the inside and out." At the end, all that's left behind is a tooth so white it's clear, with the words "Deeply White" inside the tooth.[4]





[4] https://vimeo.com/30329025 (last visited October 26, 2016)



## C.   <u>Consumers Want Whiter Teeth</u>

25.     Over the past two decades, whitening has become the most popular aesthetic dental treatment.  The popularity of whitening is due in part to consumers' perception that maintaining a healthy, whiter smile makes them look better and younger.  Studies have found that the appearance of white teeth correlates with perceptions of physical and oral health, as well as with views of social competence and intellectual ability.[5]

26.     According to a 2008 survey by the American Dental Association, 55% of respondents considered having a "nice smile" as "very important" to "physical attractiveness."  That percentage was much higher than "nice hair" (30%), "nice build or figure" (24%), "nice eyes" (35%), and "nice skin" (37%).  Further, 73% of respondents agreed with the statement that "no matter how nice a person's smile is, yellow teeth really ruin the effect."

---

[5] Van der Geld P, Oosterveld P, Van Heck G, Kuijpers-Jagtman AM. Smile attractiveness. Self-perception and influence on personality. *The Angle Orthodontist* 2007;**77**(5):759-65.

27.     Additionally, a 2014 study conducted by the American Academy of Cosmetic Dentistry found that 99.7% of respondents believed that a smile is an important social asset, that 96% believed that an attractive smile makes a person more attractive to the opposite sex, and that 74% believed that an unattractive smile can hurt a person's chance for career success.  Recent studies have revealed that up to 55% of consumers are dissatisfied with their tooth color. [6]

28.     Societal trends that increasingly focus on whitening, combined with the fact that teeth become darker as people get older, means that there is tremendous demand for whitening among an aging baby boomer population.  In 2008, the American Academy of Cosmetic Dentistry ("AACD") reported that bleaching procedures and tooth whitening had increased by more than 300% over the previous 5 years.  Dr. James Hastings, the president of AACD, observed that "[t]eeth whitening is still the most popular cosmetic dentistry procedure."

29.     As noted by the Los Angeles Times, "Whitening mania is especially obvious in the toothpaste aisle.  Just about every major brand now comes in special whitening formulas." [7]  In an effort to capitalize on the booming Tooth Whitening Market, Defendants' introduced the REMBRANDT® Deeply White™ collection in 2011.  Moreover, to differentiate its products from its competitors, Defendants sought to equate the effectiveness of the Deeply White Products with more expensive in-office dental treatments.  For example, Defendants boast:

> So, how is Deeply White™ different than any other whitening products you can buy? Deeply White™ is the first all-in-one fluoride toothpaste to contain **Active Dental Peroxide**– the same enamel-safe ingredient dentists use to whiten deep stains, not just surface stains.[8]

[6] Alkhatib MN, Holt R, Bedi R. Age and perception of dental appearance and tooth colour.*Gerodontology*2005;**22**(**1**):32-6.

[7] http://articles.latimes.com/2011/jul/04/health/la-he-skeptic-whitening-toothpaste-20110704 (last visited October 26, 2016)

[8] http://www.rembrandt.com/teeth-whitening/behind-scenes.html (last visited October 26, 2016)

30.     Against that background, it's clear that Defendants' ubiquitous deep whitening representations are material to consumers.  In fact, Defendants note on their website that:[9]

> To truly understand the consumer and what they are looking for, REMBRANDT® spends a lot of time **interacting with consumers** to get to know their individual needs. At the same time, there is a lot of activity to **develop new technologies**. This includes basic research on teeth, staining, effects of age on tooth appearance and how to improve not just the appearance, but the health of the teeth and mouth. Once technology is identified, the team then moves into the product development phase where the products are actually made, focusing on getting the consistency, flavor, form, fit, texture and comfort just right to deliver that great consumer experience.

31.     In short, Defendants' deep whitening claims are material to consumers' purchasing decisions.

**D.     The Deeply White Products Do Not "Deeply Whiten" Teeth**

32.     Defendants representations that the Deeply White Products deeply whiten teeth are false and misleading because peroxide in toothpaste and mouthwash does not work on deep stains.  Peroxide in toothpaste and mouthwash does not whiten intrinsic stains because the amount of peroxide is too small, and then it gets rinsed away before it can deeply whiten teeth.[10]

33.     Intrinsic or deep whitening implies that the active ingredient, peroxide, physically penetrates the pellicle, the enamel layer and then into the deeper dentin layer of teeth.  But it has long been known and demonstrated not only in studies, but clinically as well, that this process, or degree of penetration is a slow and difficult process requiring all of the following: (1) **time** (preferably 4 hour daily applications for 2 to 4 weeks), (2) **proximity** (active ingredient held intimately against the tooth

---

[9] http://www.rembrandt.com/teeth-whitening/behind-scenes.html (last visted October 26, 2016)

[10] Unlike deep or intrinsic stains, surface stains can be relatively easily removed on a daily base with regularly use of a dentifrice (toothpaste).  Intrinsic or deep stains, on the other hand, are located below the enamel surface.

surface in a protected and ideal environment such  as a custom made whitening tray),

and (3) **strength**  (the proper chemical concentration - 10% peroxide to 30%

carbamide peroxide - and therefore a therapeutic dose of the active ingredient).

Peroxide in toothpastes and mouthwash meet none of these conditions.

34.     The peroxide in the Deeply White Products[11] is only in contact with

teeth for one minute when used as directed.  As a result, the peroxide in Deeply

White meets neither the time nor the proximity requirements for whitening deep

stains.

35.     In contrast, the typical bleaching tray at home technique uses a 10-15%

carbamide peroxide solution in a custom-made bleach tray that is in direct contact

with teeth and that must be worn for a minimum of two hours.[12]  In fact, even

Defendants market a Whitening Kit that uses a tray filled with peroxide gel that is

held directly against teeth for a total treatment time of two (2) hours.[13]

36.     Deeply White Products also do not contain enough peroxide "[b]ecause

the toothpaste gets all over your mouth, including your gums, and because you might

swallow some, the amount of hydrogen peroxide is small."[14]   Thus, like the time and

proximity conditions, the strength condition is not met.

37.     Moreover, Defendants' Products contain much less peroxide than

dentists use to whiten deep stains.  Thus, Defendants' claim that the Products contain

"the same enamel-safe whitening ingredient that dentists use" is false and

---

[11] The peroxide in Rembrandt Deeply Toothpaste is carbamide peroxide or urea peroxide.  Hydrogen peroxide is released from carbamide peroxide when it mixes with saliva.  The peroxide in Rembrandt Deeply Mouthwash is hydrogen peroxide.

[12] Illumnine Professional Bleaching, Technical Manual (2001)

[13] http://www.rembrandt.com/teeth-whitening-products/whitening-kits.html#

[14] De Vizio, *What are the disadvantages of using whitening toothpaste?*, Teeth Whitening, Sharecare (July 27, 2011) (http://www.sharecare.com/health/teethwhitening/Disadvantagesofusingwhiteningtoothpaste)

misleading.  For similar reasons, Defendants products do not provide "Superior Whitening."

38.    Since peroxide in toothpaste and mouthwash does not meet the time, proximity, or strength requirements for deep whitening, dentists agree that peroxide in toothpaste does not work on intrinsic stains.  The following are just a few examples where dentists explain the inability of peroxide in toothpaste and mouthwash to deeply whiten teeth:

- "Whitening toothpastes … help remove surface stains through use of a mild abrasive … Some toothpaste may contain an additional chemical or polishing agent to bolster its effectiveness. Common examples of these are peroxide, titanium dioxide and baking soda.  However, **none of these products actually alter the shade of the tooth.**"[15]

- "**Most toothpastes and mouthrinses that advertise a whitening effect contain hydrogen peroxide – since these are being swallowed and are not given a lot of time in contact with the tooth surface, they do not provide much whitening benefit.**  In fact, they are most likely to irritate the soft tissues of the mouth such as the gums, tongue, and palate."[16]

- "There's no doubt that whitening toothpastes can clean stains off teeth and give them a little extra gleam.  But the term 'whitening' is misleading.  **Unlike trays and strips that can bleach deep within a tooth** … toothpastes can reach only the surface … **bleaches in toothpastes are useless because they'll get rinsed away before they do anything.**"[17]

- "The newer whitening toothpastes whiten your teeth chemically with a hydrogen peroxide-based chemical.  **These toothpastes contain the right chemical for whitening, but you're never going to get the results with only two, or even five minutes of brushing.**

  **Proper whitening requires you to hold the peroxide up against the tooth for several hours or more.**  You can think of

---

[15] DMD Mennito, Anthony S., *A Simple Guide to Tooth Whitening*

[16] http://mccabefamilydentistry.ca/how-does-tooth-whitening-work/

[17] *See* Woolston, Chris, *Are Whitening Toothpastes a Bright Idea?*, The Healthy Skeptic, Los Angeles Times (July 4, 2011) (*available at* http://articles.latimes.com/2011/jul/04/health/la-he-skeptic-whitening-toothpaste-20110704).

---

the second type of whitening toothpaste like sandpaper – the increased abrasiveness in whitening toothpaste helps to polish and remove surface staining.  This is effective for removing surface staining from coffee, tea, and berries.

**Be aware that you are only removing stains, not changing the intrinsic color of your teeth.**

I don't recommend these toothpastes because they remove tooth structure by scraping away dentin and enamel."[18]

- "**Toothpastes with hydrogen peroxide are not very effective** because the peroxide reacts with other substances on the teeth.  The effectiveness is also dependent on the duration of time peroxide is on the teeth.  The longer it is in contact with the tooth surface, the better it works.  **Since brushing is usually done quickly, peroxide does not have much time to work properly**."[19]

- "Unless a peroxide toothpaste is left in contact with teeth for 30 minutes it's probably not going to have an effect."[20]

39.    Moreover, scientific research also shows that the whitening effect of hydrogen peroxide in toothpaste is not clinically significant.  As researchers summarized in the Brazilian Dental Journal:  "In vitro studies show that brushing with toothpaste containing bleaching products do not promote significant results in discolored teeth compared to conventional dentifrices [toothpastes], concluding that these dentifrices, due to their mechanical action (abrasion) and the increase of high-performance abrasives as hydrated silica, act just at removing pigmentation, giving a false sense of whitening." [21]

---

[18] Burhenne, Mark, *How Toothpaste Packaging Messes With Your Mind*, Ask the Dentist (Oct. 15, 2014) (*available at* http://askthedentist.com/toothpastemarketing/)

[19] Dynamic Dental Educators, *Teeth Whitening*, ADA Continuing Education Recognition Program (May 1, 2014).

[20] Coleman, Claire, *Is whitening toothpaste just a waste of money?*, Daily Mail, (Jan. 20, 2013 (*available at* http://www.dailymail.co.uk/femail/article-2265539/Is-whitening-toothpaste-just-waste-money-They-promise-dazzling-Hollywood-smile-investigation-reveals-products-barely-make-difference.html)

[21] Horn, Bruna Andrade, *Clinical Evaluation of the Whitening Effect of Over-the-Counter Dentifrices on Vital Teeth*, Braz. Dent. J. Vol. 25 No. 3 (2014).

---

40.     In another example, in the Brazilian Oral Research Journal, researchers explained that the whitening effect obtained from whitening toothpastes is not clinically significant because a "study that compared the efficacy and safety of three OTC bleaching products (1% hydrogen peroxide dentifrice [toothpaste], 18% carbamide peroxide paint-on gel, and 5% carbamide tray system) showed that … **the paint-on gel and dentifrice [toothpaste] groups did not result in significant color improvements from baseline**."[22]

## CLASS ACTION ALLEGATIONS

41.     Plaintiffs bring this action as a class action under Federal Rule of Civil Procedure 23 on behalf of a Class consisting of all persons in the United States who, within the relevant statute of limitations period, purchased Deeply White Products.

42.     Plaintiffs Melanie Barber, and Ki Burke also seek to represent a subclass defined as all members of the Class who purchased Deeply White Products in California ("the California Class").

43.     Plaintiff Joseph Gregorio also seeks to represent a subclass defined as all members of the Class who purchased Deeply White Products in New York ("the New York Class").

44.     Excluded from the Classes are Defendants, the officers and directors of the Defendants at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which either Defendants have or had a controlling interest.

45.     Also excluded from the Classes are persons or entities that purchased Deeply White Products for purposes of resale.

46.     Plaintiffs are members of the Classes they seek to represent.

47.     The Classes are so numerous that joinder of all members is impractical. Although Plaintiffs do not yet know the exact size of the Classes, Deeply White

---

[22] Demarco, Flavio, *Over-the-counter whitening agents: a concise review*, Braz. Oral Res. Vol. 23 Supl.1 (2009).

Products are sold in major retail stores across the United States, including stores such as Target, and Walgreens.  Major online retailers include Amazon.com and Drugstore.com.  Upon information and belief, the Class includes more than one million members.

48.     The Classes are ascertainable because the Class Members can be identified by objective criteria – the purchase of Deeply White Products during the Class Period.  Individual notice can be provided to Class Members "who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

49.     There are numerous questions of law and fact common to the Class which predominate over any individual actions or issues, including but not limited to:

(a)     Whether Defendants breached an express warranty made to Plaintiffs and the Class;

(b)     Whether Defendants breached the implied warranty of fitness for a particular purpose;

(c)     Whether Defendants' marketing of the Deeply White Products is false, misleading, and/or deceptive;

(d)     Whether Defendants marketing of the Deeply White Products is an unfair business practice;

(e)     Whether the Deeply White Products go beyond surface stains to deeply whiten teeth;

(f)     Whether the Deeply White Products provide superior whitening;

(g)     Whether Defendants' claim that the Products contain the same ingredients that dentists use is misleading;

(h)     Whether Defendants were unjustly enriched by their conduct;

(i)     Whether Defendants violated the CLRA;

(j)     Whether Defendants violated the UCL;

(k)     Whether Defendants violated the FAL;

(l)   Whether Defendants violated the GBL:

(m)   Whether Class Members suffered an ascertainable loss as a result of Defendants' misrepresentations; and

(n)   Whether, as a result of Defendants' misconduct as alleged herein, Plaintiffs and the Class Members are entitled to restitution, injunctive and/or monetary relief and, if so, the amount and nature of such relief.

50.   Plaintiffs' claims are typical of the claims of the members of the Classes as all members of the Classes are similarly affected by Defendants' wrongful conduct.  Plaintiffs have no interests antagonistic to the interests of the other members of the Classes.  Plaintiffs and all members of the Classes have sustained economic injury arising out of Defendants' violations of common and statutory law as alleged herein.

51.   Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class Members they seek to represent, they have retained counsel competent and experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of the Class Members will be fairly and adequately protected by Plaintiffs and their counsel.

52.   The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and the Class Members.  Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of

single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment of the liability issues will ensure that all claims are consistently adjudicated.

## COUNT I

### (Breach of Express Warranty)

53.    Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

54.    Plaintiffs bring this Count individually and on behalf of the members of the Class.

55.    In connection with the sale of the Deeply White Products, Defendants expressly warranted that the Deeply White Products were effective and would whiten intrinsic stains below the tooth's surface.  Defendants issued express warranties including:

- "Deeply White"
- "Whitens Deeper"
- "Peroxide Toothpaste Formulated for Superior Whitening"
- "Goes beyond surface stain whitening, to a radiant smile that shines from the inside and out"
- "Tooth discoloration is caused by two types of stains – surface stains, and deep stains.  Unlike most whitening toothpastes, which only whiten on the surface, this daily-use deep whitening formula is expertly designed to provide double whitening action – ON THE SURFACE: gently polishes away surface stains without scratching the enamel – BELOW THE SURFACE: safely whitens below the enamel to help remove deep stains where they start"
- "Active Dental Peroxide – the same enamel-safe whitening ingredient that dentists use"
- "Fluoride Mouthwash Designed for Superior Whitening"

- "Deeply Whitens with the same enamel-safe ingredient dentists use"

56.     Defendants' affirmations of fact and promises made to Plaintiffs and the Class on labels, became part of the basis of the bargain between Defendants on the one hand, and Plaintiffs and the Class Members on the other, thereby creating express warranties that the Deeply White Products would conform to Defendants' affirmations of fact, representations, promises, and descriptions.

57.     Defendants breached their express warranties because the Deeply White Products do not in fact deeply whiten teeth, do not go beyond surface stain removal, do not whiten deeper, do not provide superior whitening, do not deeply whiten, do not remove deep stains, and do not contain a comparable ingredient to the whitening ingredient that dentists use.  In short, the Deeply White Products do not perform as expressly warranted.

58.     Plaintiffs and the Class Members were injured as a direct and proximate result of Defendants' breach because: (a) they would not have purchased the Deeply White Products if they had known the true facts; (b) they paid for the Deeply White Products due to the mislabeling; and (c) the Deeply White Products did not have the quality, effectiveness, or value as promised.  As a result, Plaintiffs and the Class have been damaged.

## COUNT II

### (Breach of Implied Warranty of Fitness for a Particular Purpose)

59.     Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

60.     Plaintiffs bring this Count individually and on behalf of the members of the Class.

61.     Defendants marketed, distributed, and/or sold the Deeply White Products with implied warranties that they were fit for the particular purpose of deeply whitening teeth, and going beyond surface stain removal to whiten below the tooth's surface.  However, the peroxide in the Deeply White Products have no effect

on intrinsic stains in teeth and do not deeply whiten teeth.  At the time the Deeply White Products were sold, Defendants knew or should have known that Plaintiffs and the Class Members would rely on Defendants' skill and judgment regarding the efficacy of the Deeply White Products.

62.     In reliance on Defendants' skill and judgment and the implied warranties of fitness for the purpose, Plaintiffs and the Class Members purchased the Deeply White Products for use in deeply whitening teeth.

63.     The Deeply White Products were not altered by Plaintiffs or the Class Members.

64.     Plaintiffs and the Class Members were injured as a direct and proximate result of Defendants' breach because: (a) they would not have purchased the Deeply White Products if the true facts concerning their efficacy had been known; (b) they paid an increased price for the Deeply White Products based on Defendants' representations regarding their efficacy; and (c) the Deeply White Products did not have the characteristics, uses, or benefits as promised.  As a result, Plaintiffs and the Class Members have been damaged.

## COUNT III

### (Consumer Legal Remedies Act, Civil Code §§ 1750, *et. seq.*)

65.     Plaintiffs Barber and Burke bring this Count individually and on behalf of the California Class.

66.     Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

67.     Plaintiffs and the California Class Members are consumers who purchased Deeply White Products for personal, family, or household purposes. Accordingly, Plaintiffs and the California Class Members are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d).  Plaintiffs and the California Class Members are not sophisticated experts with independent knowledge of the formulation or efficacy of the Deeply White Products.

68.     At all relevant times, the Deeply White Products constituted "good[s]" as that term is defined in Cal. Civ. Code § 1761(a).

69.     At all relevant times, Defendants were "person[s]" as that term is defined in Civ. Code § 1761(c).

70.     At all relevant times, Plaintiffs' purchase of the Deeply White Products, and the purchases of the Deeply White Products by other Class Members, constituted "transactions" as that term is defined in Cal. Civ. Code § 1761(e).  Defendants' actions, representations, and conduct has violated, and continues to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of the Deeply White Products to consumers.

71.     The policies, acts, and practices described in this Complaint were intended to and did result in the sale of Deeply White Products to Plaintiffs and the Class.  Defendants' practices, acts, policies, and course of conduct violated the CLRA §1750 *et seq.* as described above.

72.     Defendants represented that the Deeply White Products had sponsorship, approval, characteristics, uses, and benefits which they did not have in violation of Cal. Civ. Code § 1770(a)(5).

73.     Defendants represented that the Deeply White Products were of a particular standard, quality, and grade, when they were another, in violation of California Civil Code § 1770(a)(7).

74.     Defendants violated California Civil Code §§ 1770(a)(5) and (a)(7) by representing that the Deeply White Products were effective at deeply whitening teeth, effective at going beyond surface stain removal to deeply whiten teeth, could provide superior whitening, and contained a comparable ingredient that dentists use. In fact, the Deeply White Products cannot deeply whiten teeth, do not go below surface stain removal, do not provide superior whitening, and contain much less peroxide than dentists use.

75.     Furthermore, as described above, Defendants made material omissions about the peroxide in their Products as compared to what dentists use, as well as with respect to their Products' ability to whiten as compared to other whitening products and treatments.

76.     Defendants represented that the Deeply White Products were of a particular standard or quality when Defendants were aware that they were of another in violation of § 1770(a)(7) of the CLRA.  Defendants represented that the Deeply White Products were effective at deeply whitening teeth, effective at going beyond surface stain removal to deeply whiten teeth, could provide superior whitening, and contained a comparable ingredient that dentists use.  In fact, the Deeply White Products cannot deeply whiten teeth, do not go below surface stain removal, do not provide superior whitening, and contain much less peroxide than dentists use.

77.     Defendants advertised the Deeply White Products with the intent not to sell them as advertised in violation of § 1770(a)(9) of the CLRA.  Defendants did not intend to sell the Deeply White Products as advertised because Defendants knew that the Deeply White Products cannot deeply whiten teeth, do not go below surface stain removal, do not provide superior whitening, and contain much less peroxide than dentists use.

78.     Plaintiffs and the California Class Members suffered injuries caused by Defendants' misrepresentations because: (a) Plaintiffs and the Class Members would not have purchased the Deeply White Products if they had known the true facts; (b) Plaintiffs and the Class paid an increased price for the Deeply White Products due to the mislabeling of the Deeply White Products; and (c) the Deeply White Products did not have the level of quality, effectiveness, or value as promised.

79.     Wherefore, Plaintiffs seek injunctive relief for this violation of the CLRA.

## COUNT IV

## (False Advertising Law, Business & Professions Code §§17500 *et seq.*)

80.    Plaintiffs Barber and Burke bring this Count individually and on behalf of the California Class.

81.    Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

82.    California's FAL (Bus. & Prof. Code §§17500, *et seq.*) makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

83.    Throughout the Class Period, Defendants committed acts of false advertising, as defined by the FAL, by using false and misleading statements to promote the sale of the Deeply White Products, as described above, and including, but not limited to, that the Deeply White Products were effective at deeply whitening teeth, effective at going beyond surface stain removal to deeply whiten teeth, could provide superior whitening, and contained a comparable ingredient that dentists use.

84.    Defendants knew or should have known, through the exercise of reasonable care, that their statements were untrue and misleading.

85.    Defendants' actions in violation of the FAL were false and misleading such that the general public is and was likely to be deceived.

86.    As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiffs and members of the Class have suffered injury and actual out-of-pocket losses as a result of Defendants' FAL violation because: (a) Plaintiffs and the Class would not have purchased the Deeply White Products if they

had known the true facts regarding the effectiveness of Deeply White Products; (b) Plaintiffs and the Class paid an increased price due to the misrepresentations about the Deeply White Products; and (c) the Deeply White Products did not have the promised quality, effectiveness, or value.

87.     Plaintiffs bring this action pursuant to Bus. & Prof. Code § 17535 for injunctive relief to enjoin the practices described herein and to require Defendants to issue corrective disclosures to consumers. Plaintiffs and the California Class are therefore entitled to: (a) an order requiring Defendants to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendants as a result of their deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiffs' attorneys' fees and costs pursuant to, *inter alia*, California Code of Civil Procedure §1021.5.

## COUNT V
### (The "Unlawful Prong" of the Unfair Competition Law, Bus. & Prof. Code §§ 17200 *et seq.*)

88.     Plaintiffs Barber and Burke bring this Count individually and on behalf of the California Class.

89.     Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

90.     The UCL, Bus. & Prof. Code § 17200 *et seq.*, provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."  The UCL also provides for injunctive relief and restitution for UCL violations.

91.      "By proscribing any unlawful business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable."  *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999) (citations and internal quotation marks omitted).

92.     Virtually any law or regulation – federal or state, statutory, or common law – can serve as a predicate for an UCL "unlawful" violation.  *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383 (2012).

93.     Defendants violated the "unlawful prong" by violating the CLRA, and the FAL, as well as by breaching express and implied warranties as described herein.

94.     As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiffs and members of the Class have suffered injury and actual out-of-pocket losses as a result of Defendants' UCL "unlawful prong" violation because: (a) Plaintiffs and the Class would not have purchased Deeply White Products if they had known the true facts regarding the effectiveness and contents of the Deeply White Products; (b) Plaintiffs and the Class paid an increased price due to the misrepresentations about the Deeply White Products; and (c) the Deeply White Products did not have the promised quality, effectiveness, or value.

95.     Pursuant to Bus. & Prof. Code §17203, Plaintiffs and the California Class are therefore entitled to: (a) an order requiring Defendants to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendants as a result of their deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiffs' attorneys' fees and costs pursuant to, *inter alia*, California Code of Civil Procedure §1021.5.

## COUNT VI

### (The "Fraudulent Prong" of the Unfair Competition Law, Bus. & Prof. Code §§ 17200 *et seq.*)

96.     Plaintiffs Barber and Burke bring this Count individually and on behalf of the California Class.

97.     Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

98. The UCL, Bus. & Prof. Code § 17200 *et seq.*, provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

99. Defendants' conduct, described herein, violated the "fraudulent" prong of the UCL because Defendants represented that the Deeply White Products were effective at deeply whitening teeth, effective at going beyond surface stain removal to deeply whiten teeth, could provide superior whitening, and contained a comparable ingredient that dentists use. In fact, the Deeply White Products cannot deeply whiten teeth, do not go below surface stain removal, do not provide superior whitening, and contain much less peroxide than dentists use.

100. Furthermore, as described above, Defendants made material omissions about the peroxide in their Products as compared to what dentists use, as well as with respect to their Products' ability to whiten as compared to other whitening products and treatments.

101. Plaintiffs and the California Class Members are not sophisticated experts with independent knowledge of the formulation or efficacy of the Deeply White Products, and they acted reasonably when they purchased the Deeply White Products based on their belief that Defendants' representations were true.

102. Defendants knew or should have known, through the exercise of reasonable care, that their representations about the Deeply White Products were untrue and misleading.

103. As a direct and proximate result of these acts, consumers have been and are being harmed. Plaintiffs and members of the Class have suffered injury and actual out-of-pocket losses as a result of Defendants' UCL "fraudulent prong" violation because: (a) Plaintiffs and the Class would not have purchased the Deeply White Products if they had known the true facts regarding the effectiveness of the Deeply White Products; (b) Plaintiffs and the Class paid an increased price due to the

misrepresentations about the Deeply White Products; and (c) the Deeply White Products did not have the promised quality, effectiveness, or value.

104.   Pursuant to Bus. & Prof. Code §17203, Plaintiffs and the California Class are therefore entitled to: (a) an order requiring Defendants to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendants as a result of their deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiffs' attorneys' fees and costs pursuant to, *inter alia*, California Code of Civil Procedure §1021.5.

<u>**COUNT VII**</u>

<u>**(The "Unfair Prong" of the Unfair Competition Law, Bus.**</u>
<u>**& Prof. Code §§ 17200 *et seq.*)**</u>

105.   Plaintiffs Barber and Burke bring this Count individually and on behalf of the California Class.

106.   Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

107.   The UCL, Bus. & Prof. Code § 17200 *et seq.*, provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

108.   Defendants' misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendants' conduct is unfair in that the harm to Plaintiffs and the Class arising from Defendants' conduct outweighs the utility, if any, of those practices.

109.   Defendants' practices as described herein are of no benefit to consumers who are tricked into believing that the Deeply White Products were effective at deeply whitening teeth, effective at going beyond surface stain removal to deeply whiten teeth, could provide superior whitening, and contained a comparable

ingredient that dentists use.  In fact, the Deeply White Products cannot deeply whiten teeth, do not go below surface stain removal, do not provide superior whitening, and contain much less peroxide than dentists use.  Defendants' practice of injecting misinformation into the marketplace about the capabilities of toothpaste and mouthwash is unethical and unscrupulous especially because consumers trust companies like Defendants to provide accurate information about dental care. Taking advantage of that trust, Defendants misrepresent the effectiveness of Deeply White Products to sell more toothpaste and mouthwash at a premium price. Consumers believe that Defendants are an authority on the effectiveness and quality of toothpaste for dental care and therefore believe Defendants' representations that toothpaste and mouthwash can magically penetrate the tooth's surface when in fact the Deeply White Products only remove some surface stains caused by things like coffee and wine.  Defendants' practices are also substantially injurious to consumers because, among other reasons, consumers pay for toothpaste and mouthwash that purportedly deeply whitens teeth, while in fact, they are unknowingly regularly using peroxide which causes sensitivity and sores when not enclosed in a dental tray against teeth and kept separate from the mouth and gums.

110.   As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiffs and members of the Class have suffered injury an actual out-of-pocket losses as a result of Defendants' UCL "unfair prong" violation because: (a) Plaintiffs and the Class would not have purchased the Deeply White Products if they had known the true facts regarding the effectiveness and contents of the Deeply White Products; (b) Plaintiffs and the Class paid an increased price due to the misrepresentations about the Deeply White Products; and (c) the Deeply White Products did not have the promised quality, effectiveness, or value.

111.   Pursuant to Bus. & Prof. Code §17203, Plaintiffs, and the California Class are therefore entitled to: (a) an order requiring Defendants to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to

Defendants as a result of their deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiffs' attorneys' fees and costs pursuant to, *inter alia*, California Code of Civil Procedure §1021.5.

## COUNT VIII

### (Deceptive Acts or Practices, New York Gen. Bus. Law. § 349)

112.   Plaintiff Gregorio brings this Count individually and on behalf of the members of the New York Subclass.

113.   Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein

114.   By the acts and conduct alleged herein, Defendants committed unfair or deceptive acts and practices.  These acts and conduct include, but are not limited to, Defendants' misrepresentations that the Deeply White Products were effective at deeply whitening teeth, effective at going beyond surface stain removal to deeply whiten teeth, could provide superior whitening, and contained a comparable ingredient that dentists use.  Furthermore, as described above, Defendants made material omissions about the peroxide in their Products as compared to what dentists use, as well as with respect to their Products' ability to whiten as compared to other whitening products and treatments.

115.   The foregoing deceptive acts and practices where directed at consumers.

116.   The foregoing deceptive acts and practice are misleading in a material way because they fundamentally misrepresent the characteristics and benefits of the Deeply White Products to induce consumers to purchase the Deeply White Products.

117.   Plaintiff and members of the New York Subclass were injured because: (a) they would not have purchased the Deeply White Products had they known that the Deeply White Products cannot deeply whiten teeth, do not go below surface stain removal, do not provide superior whitening, and contain much less peroxide than dentists use; (b) they overpaid for the Deeply White Products because they are sold at a price premium when compared to similar products that do not contain these

misrepresentations; and (c) the Deeply White Products did not have the characteristics and benefits promised.  As a result, Plaintiff and the New York Subclass were damaged by the difference in value between the Deeply White Products as advertised and the Deeply White Products as actually sold.

118.   As a result of Defendants' false, misleading, and deceptive statements and representations of fact, including but not limited to the misrepresentations described herein, Plaintiff and members of the New York Subclass have suffered and continue to suffer economic injury.

119.   Plaintiff and members of the New York Subclass suffered an ascertainable loss caused by Defendants' misrepresentations equal to the price premium.

120.   On behalf of himself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT IX

### (False Advertising, New York Gen. Bus. Law. § 350)

121.   Plaintiff Gregorio brings this Count individually and on behalf of the New York Subclass.

122.   Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

123.   By the acts and conduct alleged herein, Defendants committed unfair or deceptive acts and practices.  These acts and conduct include, but are not limited to, Defendants' misrepresentations that the Deeply White Products were effective at deeply whitening teeth, effective at going beyond surface stain removal to deeply whiten teeth, could provide superior whitening, and contained a comparable ingredient that dentists use.

1
2
3

124.   Based on the foregoing, Defendants have engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York General Business Law.

4
5
6
7

125.   Defendants' false, misleading, and deceptive statements and representations of fact, including but not limited to the misrepresentations and omissions described herein, were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

8
9
10

126.   Defendants' false, misleading, and deceptive statements and representations of fact, including but not limited to the misrepresentations described herein, have resulted in consumer injury or harm to the public interest.

11
12
13
14
15
16
17
18
19
20

127.   Plaintiffs and members of the New York Subclass were injured because: (a) they would not have purchased the Deeply White Products had they known that the Deeply White Products cannot deeply whiten teeth, do not go below surface stain removal, do not provide superior whitening, and contain much less peroxide than dentists use; (b) they overpaid for the Deeply White Products because they are sold at a price premium when compared to similar products that do not contain these misrepresentations; and (c) the Deeply White Products did not have the characteristics and benefits promised.  As a result, Plaintiff and the New York Subclass were damaged by the difference in value between the Deeply White Products as advertised and the Deeply White Products as actually sold.

21
22
23
24

128.   As a result of Defendants' false, misleading, and deceptive statements and representations of act, including but not limited to the misrepresentations described herein, Plaintiff and members of the New York Subclass have suffered and continue to suffer economic injury.

25
26
27

129.   Plaintiff and members of the New York Subclass suffered an ascertainable loss caused by Defendants' misrepresentations equal to the price premium.

28

130.   On behalf of himself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

**WHEREFORE**, Plaintiffs pray for relief and judgment, as follows:

A.     Determining that this action is a proper class action;

B.     For an order declaring that the Defendants' conduct violates the statutes referenced herein;

C.     Awarding compensatory and punitive damages in favor of Plaintiffs, members of the Class, the California Class, and the New York Class against Defendants for all damages sustained as a result of the Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

D.      Awarding injunctive relief against Defendants to prevent Defendants from continuing their ongoing unfair, unconscionable, and/or deceptive acts and practices;

E.     For an order of restitution and/or disgorgement and all other forms of equitable monetary relief;

F.     Awarding Plaintiffs and members the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

G.     Awarding such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiffs hereby demands a trial by jury on all claims so triable in this action.

1   Dated:  October 26, 2016            Respectfully submitted,

2                                       **BURSOR & FISHER, P.A.**

3

4                                       By: _____ */s/ Annick M. Persinger* _____
                                                    Annick M. Persinger

5
                                        L. Timothy Fisher (State Bar No. 191626)
6                                       Annick M. Persinger (State Bar No. 272996)
                                        1990 North California Blvd., Suite 940
7                                       Walnut Creek, CA  94596
                                        Telephone: (925) 300-4455
8                                       Facsimile: (925) 407-2700
                                        Email: ltfisher@bursor.com
9                                                 apersinger@bursor.com

10                                      **VOZZOLO LLC**
11                                      Antonio Vozzolo (*pro hac* to be filed)
                                        345 Route 17 South
12                                      Upper Saddle River, New Jersey 07458
                                        Phone: 201-630-8820
13                                      Fax: 201-604-8400
                                        avozzolo@vozzolo.com
14

15                                      *Counsel for Plaintiffs*

16

17

18

19

20

21

22

23

24

25

26

27

28