**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Annick M. Persinger (State Bar No. 272996)
Yeremey O. Krivoshey (State Bar No. 295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail:  ltfisher@bursor.com
          apersinger@bursor.com

**VOZZOLO LLC**
Antonio Vozzolo (*pro hac vice*)
345 Route 17 South
Upper Saddle River, New Jersey 07458
Phone: 201-630-8820
Fax: 201-604-8400
avozzolo@vozzolo.com

*Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELANIE BARBER, KI BURKE, and JOSEPH GREGORIO on Behalf of Themselves and all Others Similarly Situated,<br><br>                    Plaintiffs,<br><br>      v.<br><br>JOHNSON & JOHNSON, MCNEIL-PPC, INC., JOHNSON & JOHNSON CONSUMER, INC., and RANIR LLC<br><br>                    Defendants. | Case No. 8:16-cv-1954-JLS-JCG<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, OR STRIKE PORTIONS OF THE FIRST AMENDED COMPLAINT**<br><br>Date:  March 10, 2017<br>Time:  2:30 p.m.<br>Courtroom 10A<br><br>Hon. Josephine L. Staton |

1
2

# TABLE OF CONTENTS

**PAGE(S)**

I.    INTRODUCTION ..................................................................................... 1

II.   DEFENDANTS' ARGUMENT THAT PLAINTIFFS'
      NATIONWIDE CLASS CLAIMS SHOULD BE STRICKEN IS
      CLEARLY PREMATURE ........................................................................ 2

III.  PLAINTIFF GREGORIO MAY PURSUE CLAIMS ON
      BEHALF OF NEW YORK PURCHASERS OF DEFENDANTS'
      SUBSTANTIALLY SIMILAR MOUTHWASH PRODUCTS ...................... 7

IV.   PLAINTIFFS HAVE ARTICLE III STANDING TO
      CHALLENGE DEFENDANTS' OVERALL MARKETING
      CAMPAIGN ......................................................................................... 11

V.    PLAINTIFFS' WARRANTY CLAIMS DO NOT VIOLATE
      RULE 8 ................................................................................................ 18

VI.   PLAINTIFFS BARBER AND BURKE'S IMPLIED
      WARRANTY CLAIMS SHOULD NOT BE DISMISSED .......................... 18

VII.  PLAINTIFF GREGORIO'S EXPRESS WARRANTY CLAIMS
      SHOULD NOT BE DISMISSED .............................................................. 21

VIII. PLAINTIFFS HAVE STANDING TO SEEK INJUNCTIVE
      RELIEF ................................................................................................ 23

IX.   CONCLUSION ..................................................................................... 25

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Am. Suzuki Motor Corp. v. Superior Court*,
   37 Cal. App. 4th 1291 (1995)...............................................................19

*Anderson v. Jamba Juice Co.*,
   888 F. Supp. 2d 1000 (N.D. Cal. 2012) ...............................................11

*Astiana v. Ben & Jerry's Homemade, Inc.*,
   2011 WL 2111796 (N.D. Cal. May 26, 2011) .........................................3

*Astiana v. Dreyer's Grand Ice Cream, Inc.*,
   2012 WL 2990766 (N.D. Cal. July 20, 2012).....................................8, 10

*Astiana v. Kashi Co.*,
   291 F.R.D. 493 (S.D. Cal. 2013)...............................................................6

*Atronic Int'l, GmbH v. SAI Semispecialists of Am., Inc.*,
   2006 WL 2654827 (E.D.N.Y. Sept. 15, 2006)......................................21

*Bruno v. Eckhart Corp.*,
   280 F.R.D. 540 (C.D. Cal. 2012) .............................................................6

*Bruno v. Quten Research Inst., LLC*,
   280 F.R.D. 524 (C.D. Cal. 2011) .......................................................8, 14

*Cardenas v. NBTY, Inc.*,
   870 F. Supp. 2d 984 (E.D. Cal. 2012) ...............................................8, 13

*Cipollone v. Liggett Grp., Inc.*,
   683 F. Supp. 1487 (D.N.J. 1988) ...........................................................22

*Clark v. State Farm Mut. Auto. Ins. Co.*,
   231 F.R.D. 405 (C.D. Cal. 2005) .......................................................2, 3

*Cliffstar Corp. v. Elmar Indus., Inc*,
   678 N.Y.S.2d 222 (4th Dep't 1998).........................................................22

*Coyle v. Hornell Brewing Co.*,
   2010 WL 2539386 (D.N.J. June 15, 2010) ...........................................23

*Daniel v. Ford Motor Co.*,
   806 F.3d 1217 (9th Cir. 2015)................................................................16

*Davis-Miller v. Auto. Club of S. Cal.*,
   201 Cal. App. 4th 106 (2011).................................................................12

*Davison v. Kia Motors Am. Inc.*,
   2015 WL 3970502 (C.D. Cal. June 29, 2015) .........................................5

*De Leon v. Standard Insurance Co.*,
   2016 WL 768908 (C.D. Cal. Jan. 28, 2016) ......................................................4

*Dean v. Colgate-Palmolive Co.*,
   2015 WL 3999313 (C.D. Cal. June 17, 2015) .........................................1, 5, 24, 25

*Delarosa v. Boiron, Inc.*,
   2012 WL 8716658 (C.D. Cal. Dec. 28, 2012) ......................................................24

*Donohue v. Apple, Inc.*,
   871 F. Supp. 2d 913 (N.D. Cal. 2012) ..............................................................3, 8

*Dorfman v. Nutramax Labs., Inc.*,
   2013 WL 5353043 (S.D. Cal. Sept. 23, 2013) ....................................................14

*Ebin v. Kangadis Foods, Inc.*,
   2014 WL 737878 (S.D.N.Y. Feb. 25, 2014) .......................................................23

*Filler v. Rayex Corp.*,
   435 F.2d 336 (7th Cir. 1970) ...........................................................................19

*Fitzpatrick v. Gen. Mills, Inc.*,
   263 F.R.D. 687 (S.D. Fla. 2010) .......................................................................12

*Forcellati v. Hyland's, Inc.*,
   2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) .........................................................5

*Forcellati v. Hyland's, Inc.*,
   876 F. Supp. 2d 1155 (C.D. Cal. 2012) ........................................................3, 4, 6, 7

*Frezza v. Google, Inc.*,
   2013 WL 1736788 (N.D. Cal. Apr. 22, 2013) .......................................................4

*Greenman v. Yuba Power Prod., Inc.*,
   59 Cal. 2d 57, 377 P.2d 897 (1963) ..................................................................23

*Grodzitsky v. Am. Honda Motor Co.*,
   2013 WL 690822 (C.D. Cal. Feb. 19, 2013) ..........................................................2

*Harris v. Las Vegas Sands L.L.C.*,
   2013 WL 5291142 (C.D. Cal. Aug. 16, 2013) .....................................................24

*Henderson v. Gruma Corp.*,
   2011 WL 1362188, (C.D. Cal. Apr.11, 2011) .................................................24, 25

*Hunter v. Nature's Way Prods., L.L.C.*,
   2016 WL 4262188 (S.D. Cal. Aug. 12, 2016) .....................................................16

*Hydroxycut Mktg. & Sales Practices Litig.*,
   2010 WL 1734948 (S.D. Cal. Apr. 26, 2010) .....................................................23

*In re 5-hour ENERGY*,
   2014 WL 5311272 (C.D. Cal. Sept. 4, 2014) .........................................................2

*In re Charles Schwab Corp. Sec. Litig.,*
  257 F.R.D. 534 (N.D. Cal. 2009) ..................................................................... 3

*In re First All. Mortg. Co.,*
  471 F.3d 977 (9th Cir. 2006) ......................................................................... 15

*In re Frito-Lay N. Am., Inc. All Natural Litig.,*
  2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ........................................... 8, 13

*In re Oreck Corp. Halo Vacuum & Air Purifiers Mktg. & Sales Practices Litig.,*
  2012 WL 6062047 (C.D. Cal. Dec. 3, 2012) ................................................ 16

*In re Scotts EZ Seed Litig.,*
  304 F.R.D. 397 (S.D.N.Y. 2015) ................................................................... 17

*In re Tobacco II Cases,*
  46 Cal. 4th 298 (2009) ....................................................................... 14, 16, 17

*In re VeriSign, Inc.,*
  2005 WL 88969 (N.D. Cal. 2005) ................................................................. 13

*In re Wal-Mart Stores, Inc. Wage & Hour Litig.,*
  505 F. Supp. 2d 609 (N.D. Cal. 2007) ............................................................ 2

*Ivie v. Kraft Foods Global, Inc.,*
  961 F. Supp. 2d 1033 (2013) .................................................................... 11, 18

*Jovel v. I-Health, Inc.,*
  2013 WL 5437065 (E.D.N.Y. Sept. 27, 2013) .............................................. 16

*Kanfer v. Pharmacare US, Inc.,*
  142 F. Supp. 3d 1091 (2015) ......................................................................... 12

*Keniston v. Roberts,*
  717 F.2d 1295 (9th Cir. 1983) ....................................................................... 25

*Koch v. Acker, Merrall & Condit Co.,*
  18 N.Y.3d 940 (2012) .................................................................................... 17

*Koh v. S.C. Johnson & Son, Inc.,*
  2010 WL 94265 (N.D. Cal. Jan. 6, 2010) ........................................................ 8

*Lanovaz v. Twinings N. Amer., Inc.,*
  2014 WL 1652338 (N.D. Cal. Apr. 24, 2014) ............................................... 25

*Mazza v. Am. Honda Motor Co.,*
  666 F.3d 581 (9th Cir. 2012) ...................................................................... 3, 5

*Medallion Prods. v. H.C.T.V., Inc.,*
  2007 WL 1022010 (N.D. Ill. Mar. 29, 2007) ................................................ 21

*Medinol Ltd. v. Boston Sci. Corp.,*
  346 F. Supp. 2d 575 (S.D.N.Y. 2004) ........................................................... 22

*Melgar v. Zicam LLC*,
   2016 WL 1267870 (E.D. Cal. March 31, 2016) ........................................4, 5

*Mohamed v. Kellog Co.*,
   2015 WL 12459107 (S.D. Cal. Aug. 19, 2015) ..................................................15

*Morey v. NextFoods, Inc.*,
   2010 WL 2473314 (S.D. Cal. June 7, 2010) .....................................................14

*Morgan v. AT&T Wireless Servs., Inc.*,
   177 Cal. App. 4th 1235 (2009) ..........................................................................14

*Morgan v. Wallaby Yogurt Company, Inc.*,
   2014 WL 1017879 (N.D. Cal. March 13, 2014) ...............................................25

*Morrison v. Trivita, Inc.*,
   2013 WL 1148070 (S.D. Cal. Mar. 18, 2013) ...................................................15

*Musgrave v. ICC/Marie Callender's Gourmet Prods. Div.*,
   2015 WL 510919 (N.D. Cal. Feb. 5, 2015) .......................................................12

*Ogden v. Bumble Bee Foods, LLC*,
   292 F.R.D. 620 (N.D. Cal. 2013) ........................................................................9

*Opperman v. Path, Inc.*,
   87 F. Supp. 3d 1018 (N.D. Cal. 2014) ................................................................5

*Palmer v. A.H. Robins Co.*,
   684 P.2d 187 (Colo. 1984) .................................................................................19

*Panda Capital Corp. v. Kopo Int'l*,
   242 A.D.2d 690 (N.Y. App. Div. 1997) ...........................................................22

*Paulino v. Conopco, Inc.*,
   2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015) .................................................22

*Prata v. Superior Court*,
   91 Cal. App. 4th 1128 (2001) ............................................................................16

*Punian v. Gillette Co.*,
   2016 WL 1029607 (N.D. Cal. Mar. 15, 2016) .................................................20

*Ries v. Arizona Beverages USA LLC*,
   287 F.R.D. 523 (N.D. Cal. 2012) ................................................................24, 25

*Rikos v. Procter & Gamble Co.*,
   782 F. Supp. 2d 522 (S.D. Ohio 2011) ..............................................................14

*Rosales v. Citibank, Fed. Sav. Bank*,
   133 F. Supp. 2d 1177 (N.D. Cal. 2001) .............................................................11

*Rysewyk v. Sears Holdings Corp.*,
   2015 WL 9259886 (N.D. Ill. Dec. 18, 2015) .....................................................5

*San Diego Cty. Gun Rights Comm. v. Reno*,
   98 F.3d 1121 (9th Cir. 1996) .................................................................. 13

*Schramm v. JPMorgan Chase Bank, N.A.*,
   2011 WL 5034663 (C.D. Cal. Oct. 19, 2011) ........................................ 7

*Silverstein v. R.H. Macy & Co.*,
   266 A.D. 5, 40 N.Y.S.2d 916 (App. Div. 1943) .................................. 22

*Smith v. LG Elecs. U.S.A., Inc.*,
   2014 WL 989742 (N.D. Cal. Mar. 11, 2014) ........................................ 20

*Sosna v. Iowa*,
   419 U.S. 393 (1975) ................................................................................ 13

*Taylor v. JVC Ams. Corp.*,
   2008 WL 2242451 (D.N.J. May 30, 2008) ............................................ 21

*Walsh v. Nevada Dep't of Human*,
   Res., 471 F.3d 1033 (9th Cir. 2006) ...................................................... 25

*Walter v. Hughes Commc'ns, Inc.*,
   682 F. Supp. 2d 1031 (N.D. Cal. 2010) ................................................ 17

*Wang v. OCZ Tech. Grp., Inc.*,
   276 F.R.D. 618 (N.D. Cal. 2011) .......................................................... 11

*Weisblum v. Prophase Labs, Inc.*,
   88 F. Supp. 3d 283 (S.D.N.Y. 2015) ................................................ 9, 10

*Werdebaugh v. Blue Diamond Growers*,
   2013 WL 5487236 (N.D. Cal. Oct. 2, 2013) ...................................... 9, 11

*Whittlestone, Inc. v. Handi-Craft Co.*,
   618 F.3d 970 (9th Cir. 2010) .................................................................. 2

*Wilson v. Frito-Lay North America*,
   961 F. Supp. 2d ................................................................................ 17, 18

**STATUTES**

N.J. Stat. Ann. § 12A:2-607(3)(a) (West) .................................................. 23

N.Y. U.C.C. Law § 2-607 ...................................................................... 22, 23

N.Y. U.C.C. § 2-607(3)(a) .......................................................................... 23

U.C.C. § 2-315 ............................................................................................ 21

**OTHER AUTHORITIES**

2 Newberg on Class Actions § 4:57 .............................................................. 7

N.Y. Pattern Jury Instr.--Civil 2:140 .......................................................... 23

## I.    INTRODUCTION

Plaintiffs each bought products from Defendants' "Deeply White + Peroxide" product line, hoping that the products would – as the packaging promised – "deeply whiten" their teeth.[1]  But they did not receive the deep whitening that they had hoped for.  In fact, they allege that peroxide based products like those at issue cannot reach deep stains because the peroxide is not in contact with one's teeth for long enough. Unhappy with their purchase, Plaintiffs filed a class-action lawsuit seeking relief for others who had been similarly taken in by the promise of deep whitening.  Even though Judge Bernal of this District already denied a motion to dismiss in a nearly identical case involving Colgate's promises of deep whitening, Defendants adopted the same "time-worn strategy" that Colgate did "of throwing everything at the wall and hoping something would stick."  *See Dean v. Colgate-Palmolive Co.*, 2015 WL 3999313, at *11 (C.D. Cal. June 17, 2015).  Nothing does.  *See id.*

Most of Defendants' arguments attempt to prematurely litigate class certification.  But Defendants cannot use Rule 12 to circumvent the factual analysis performed under Rule 23.  As discussed more fully below, Defendants' argument that the Court should strike Plaintiffs' class allegations is premature and better left to class certification.  Similarly, Defendants' contention that claims brought on behalf of New York purchasers of the Deeply White + Peroxide mouthwash are better assessed through the lens of typicality and adequacy at class certification. Defendants' argument that relevant allegations in the Complaint related to Defendants' integrated marketing campaign that touts the products' deep whitening ability are likewise relevant to class certification and should not be stricken.  Further, as discussed below, Defendants' arguments related to Plaintiffs' well-pleaded warranty claims are unpersuasive.  Finally, Defendants' claim that Plaintiffs do not

---

[1] Defendants' Deeply White + Peroxide product line includes both Deeply White + Peroxide toothpaste and Deeply White + Peroxide mouthwash (hereafter, collectively, the "Deeply White + Peroxide products").

have standing to seek injunctive relief also fails.  Accordingly, the Court should deny Defendants' motion.

## II.   DEFENDANTS' ARGUMENT THAT PLAINTIFFS' NATIONWIDE CLASS CLAIMS SHOULD BE STRICKEN IS PREMATURE

When evaluating a pre-discovery motion to strike class allegations pursuant to Rule 12(f), courts apply the standard otherwise applicable to Rule 12(b)(6) motion to dismiss.  *See Clark v. State Farm Mut. Auto. Ins. Co.*, 231 F.R.D. 405, 406 (C.D. Cal. 2005) (denying motion to strike, and holding that "when considering a motion to strike, courts must view the pleading in the light more favorable to the pleader") (citation omitted); *see also Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (instructing that "courts may not resolve disputed and substantial factual or legal issues in deciding a motion to strike" (internal citations omitted)).  A "[m]atter will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation." *Id.* at 406.   Accordingly, Defendants' motion should be denied because the Complaint adequately alleges that class treatment of Plaintiffs' claims is warranted.  *Id.* at 407 ("While "Plaintiff's complaint contains conclusory class action allegations, the allegations address each of the elements of Rule 23, relate to the subject matter of the litigation, and are not redundant, immaterial, or impertinent.").

Moreover, Rule 12(f) motions to strike class allegations are regarded with disfavor.  A majority of California case law holds that it is rare to strike class allegations at the pleadings stage, and in advance of a motion for class certification. *See*, *e.g.*, *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 614–16 (N.D. Cal. 2007); *In re 5-hour ENERGY*, 2014 WL 5311272, at *18 (C.D. Cal. Sept. 4, 2014) ("At this point in the litigation, a choice of law analysis would be premature" where plaintiffs sought to assert nationwide class claims for violation of Magnuson-Moss Act, breach of express warranty, breach of implied warranty, and fraud); *Grodzitsky v. Am. Honda Motor Co.,* 2013 WL 690822, at *10 (C.D. Cal.

Feb. 19, 2013) (holding that class allegations could not be stricken where "Defendant has yet to file an answer and discovery has not yet begun").  Any doubts as to whether the class allegations should be stricken at this stage should thus be resolved in the Plaintiffs' favor.  *See In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 562 (N.D. Cal. 2009) (denying motion to strike class allegations and holding that "[i]f there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion.").  Instead, "[w]hether a plaintiff will be able to succeed on a motion for class certification . . . is an entirely separate matter to be decided at a later date."  *State Farm*, 231 F.R.D. at 407.

Relying on *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), Defendants ask this Court to strike Plaintiffs' nationwide class allegations. Defendants' Motion (hereafter "Def.") at 14-15.  As a preliminary matter, *Mazza* did not hold that nationwide classes are, as a matter of law, uncertifiable under California's consumer protection laws, which is unsurprising given the case-specific nature of choice-of-law analysis.  Indeed, the court made clear that its holding was limited to the facts before it.  *Id.* at 594.  As such, Defendants' attack on Plaintiffs' class allegations is premature at this stage of the litigation.  *See, e.g.*, *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 922 (N.D. Cal. 2012) (declining to strike Plaintiffs nationwide claims as such a determination is premature at the pleading stage); *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1159 (C.D. Cal. 2012) (declining to rule on class allegations in context of motion to dismiss).  A motion to strike class allegations at the pleading stage is an improper attempt to circumvent Rule 23.  *See Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 WL 2111796, at *13-15 (N.D. Cal. May 26, 2011).

Furthermore, given the facts of this case, any differences in state law are not material and cannot justify granting Defendants' motion.  Even if the Court were to later find material differences sufficient to strike the nationwide class, "once the

relevant facts of the case have been explored during discovery, it is possible that Plaintiff[s] could narrow or define the class in such a way at the class certification stage to make any differences between applicable laws immaterial." *See Forcellati*, 876 F. Supp. 2d at 1159. "Moreover, should a choice-of-law analysis appear to pose problems at the class certification stage, Plaintiff[s] could seek to certify subclasses of putative class members from individual states or subclasses of class members from groups of states with consumer protection laws that are not materially different." *See id.*

Indeed, based on the specific facts of particular consumer class action cases, courts have certified multi-state classes where the express warranty laws were not materially different. For example, in *Melgar v. Zicam LLC*, 2016 WL 1267870 (E.D. Cal. March 31, 2016), Judge England certified a 10-state warranty class of purchasers of Zicam products that were misrepresented as effective for shortening the common cold and lessening symptoms, when in fact, the products were mere placebos. *See also*, *e.g.*, *De Leon v. Standard Insurance Co.*, 2016 WL 768908, at *5 (C.D. Cal. Jan. 28, 2016) ("Plaintiff is not limited to the currently-proposed class definition. Plaintiff may move to amend her complaint prior to moving for class certification, … or may move to certify a class that is narrower than the class proposed in the Complaint.").

Defendants' reliance on *Frezza v. Google, Inc.*, 2013 WL 1736788 (N.D. Cal. Apr. 22, 2013) is misplaced. There, the court dismissed the named plaintiff's claims for violation of California's protection statutes, pursuant to *Mazza*, because the named plaintiff did not reside in California. *See Frezza*, 2013 WL 1736788, at *5-6. This is plainly not a concern here, given that both Plaintiff Barber and Plaintiff Burke reside in California and are citizens of California. Indeed, as another court recognized, "[t]he question of whether the CAC presents a certifiable class under *Mazza*, and in particular, how a choice-of-law analysis would affect class

certification, is a question for another day." *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1042 (N.D. Cal. 2014).

*Davison v. Kia Motors Am. Inc.*, 2015 WL 3970502 (C.D. Cal. June 29, 2015) is also clearly inapposite. In *Davison*, the plaintiff, a Washington resident, brought California UCL and CLRA claims on behalf of a nationwide class. Differently, here, Plaintiffs Barber and Burke, California residents, bring California UCL and CLRA claims on behalf of California residents – not on behalf of a nationwide class. Plaintiffs only allege express warranty claims on behalf of a nationwide class. Groups of states with *express warranty* laws that had no material differences given the particular facts of a given case laws have been certified. *Melgar*, 2016 WL 1267870 at *1-3, *11. Thus, unlike in *Davison*, it cannot be said that "material differences" with *express warranty laws* "are sufficiently obvious from the pleadings." *Cf. Davison*, 2015 WL 3970502, at *2 n.3. Rather, as is typical, the Court should "await the development of a factual record before determining whether the case should move forward on a representative basis." *See Dean*, 2015 WL 3999313, at *11 (refusing to strike express warranty claims on behalf of a nationwide class in a case where the plaintiff alleged that toothpaste didn't deeply whiten teeth) (internal quotations omitted); *Rysewyk v. Sears Holdings Corp.*, 2015 WL 9259886, at *8 (N.D. Ill. Dec. 18, 2015) (refusing to strike class allegations even where the court found that "Plaintiffs might not carry their burdens at class certification").

Finally, Defendants have not exhaustively detailed how the differences are material to this litigation. *See Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *2 (C.D. Cal. Apr. 9, 2014) (stating that "identifying differences in state law is but the first step …. The only differences that are relevant to the conflict-of-laws analysis are those that are material in this litigation." (citing *Mazza*, 666 F.3d at 590)).

In a slapdash attempt to show material differences, Defendants reference four general differences among state warranty laws: pre-suit notice, privity, reliance, and statutes of limitation.  Defendants' list of possible differences says nothing with respect to whether those general differences among states' laws are material *given the facts of this case*.[2]  Given the facts of this case, the four basic differences listed by Defendants will likely be immaterial.  *First*, Plaintiffs gave pre-suit notice to Defendants, so whether or not states' laws do or do not require notice is immaterial because notice has been provided here.  FAC, Dkt. 18, Exhibit A.

*Second*, with regard to "reliance," it is immaterial whether or not states' laws require individual reliance because all of the Plaintiffs in this case allege that they individually relied on Defendants' representations.  *Id.* at ¶¶ 7-9.  Plaintiffs further allege that Defendants' deeply whitens representations are material to reasonable consumers.  *Id.* at ¶¶ 1, 4-5, 18-31.  "Because the alleged misrepresentations appeared on the actual packages of the products purchased, there is no concern that the class includes individuals who were not exposed to the representation."  *Astiana v. Kashi Co.*, 291 F.R.D. 493, 500 (S.D. Cal. 2013).  Thus, given the facts of this case, state express warranty laws are not in conflict where reliance is not required, where consumers must be exposed to the representations, or where there is a requirement that representations be material to reasonable consumers.  Accordingly, at class certification, express warranty claims that have the foregoing requirements could be grouped together because those laws are not materially different given the facts of this case.  *Forcellati*, 876 F. Supp. 2d at 1159.

*Third*, as with reliance, states with similar privity requirements could be grouped together to form subclasses.  *See id.*

---

[2] Rather, a choice-of-law analysis is a case and fact-specific inquiry. *See, e.g., Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 550 (C.D. Cal. 2012) ("Defendants cannot profitably rely on the work of a different party in a different case with different facts…."); *Forcellati*, 876 F. Supp. 2d at 1161 (explaining that the defendants cannot meet their burden simply by "citing cases in which other defendants have met this burden in factually different circumstances.").

*Fourth*, Defendants' concern about the different statutes of limitations are immaterial and can be readily resolved by limiting the class to the shortest limitations period.  Indeed, "[c]ourts have been nearly unanimous . . . in holding that possible differences in the application of a statute of limitations to individual class members, including the named plaintiffs, does not preclude certification of a class action[.]"  *Schramm v. JPMorgan Chase Bank, N.A.*, 2011 WL 5034663, at *10 (C.D. Cal. Oct. 19, 2011) (internal quotations omitted); 2 Newberg on Class Actions § 4:57 (5th ed.) ("Statute of limitations defenses—like damage calculations, affirmative defenses, and counterclaims—rarely defeat class certification.").

The Court should refuse to strike Plaintiffs' nationwide express warranty claims because, until there is a factual record, material differences cannot be identified.  Thus, any decision regarding nationwide class allegations is premature.

## III.  PLAINTIFF GREGORIO MAY PURSUE CLAIMS ON BEHALF OF NEW YORK PURCHASERS OF THE MOUTHWASH PRODUCTS

In addition to bringing claims on behalf of Deeply White + Peroxide toothpaste, Plaintiff Gregorio also brings New York consumer protection claims on behalf of New York purchasers of Deeply White + Peroxide mouthwash.  FAC, Dkt. 18, at ¶¶ 113- 131.  Defendants market both Deeply White + Peroxide products as capable of going beyond surface stains such that the products deeply whiten teeth. *Id.* at ¶¶ 18-20.  Neither product is capable of going beyond surface stains to deeply whiten teeth because the amount of peroxide in the products is too small, and is not on teeth long enough to penetrate below the surface of teeth.  *Id.* at ¶¶ 32-40.

Defendants argue that "the Court should dismiss New York Plaintiff Gregorio's claims based on the Mouthwash because he did not buy it."  Def. 6.  That argument fails.  The majority of courts have concluded that whether a plaintiff may bring claims on behalf of purchasers of a similar product that that he did not buy is "better taken at class certification under the lens of typicality or adequacy of representation rather than standing."  *See Forcellati*, 876 F. Supp. 2d at 1161–62; *see*

*also Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 530 (C.D. Cal. 2011) ("District courts in California routinely hold that the issue of whether a class representative 'may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation.  Treatises and other circuits reach the same conclusion." (citations omitted)); *Donohue*, 871 F. Supp. 2d at 921–22 (same); *Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984, 992 (E.D. Cal. 2012)(same); *In re Frito-Lay N. Am., Inc. All Natural Litig.*, 2013 WL 4647512, at *12 (E.D.N.Y. Aug. 29, 2013) ("NECA-IBEW thus instructs that, [once] plaintiffs have satisfied the Article III standing inquiry, their ability to represent putative class members who purchased products plaintiffs have not themselves purchased is a question for a class certification motion."); *Astiana v. Dreyer's Grand Ice Cream, Inc.*, 2012 WL 2990766, *13 (N.D. Cal. July 20, 2012) (holding that because the plaintiffs "have alleged sufficient similarity between products they did purchase and those that they did not … any concerns of [the defendant] and/or the Court about material differences are better addressed at the class certification stage rather than at the 12(b)(6) stage."); *Koh v. S.C. Johnson & Son, Inc.*, 2010 WL 94265 at *3 (N.D. Cal. Jan. 6, 2010) (denying motion to dismiss claims asserted against two different products on standing grounds *even though the products were sold by two different companies* and deferring the issue until class certification).  Based on the foregoing persuasive authority, the question of whether Plaintiff Gregorio may bring consumer protection claims on behalf of New York purchasers of Deeply White + Peroxide mouthwash, should be addressed at class certification.[3]

---

[3] Notably, Defendants only seek to preclude Plaintiff Gregorio from bringing claims on behalf of a New York subclass of purchasers of the mouthwash under New York consumer protection law.  Plaintiff Burke, a California resident, bought both the toothpaste and the mouthwash from Defendants' Deeply White + Peroxide line of products.  As such, there is no question that Plaintiff Burke can bring claims under California consumer protection law on behalf of purchasers of Deeply White + Peroxide mouthwash.

District courts that do no defer the issue to class certification hold that a plaintiff has standing to assert claims based on substantially similar products that a plaintiff did not purchase.  *See*, *e.g.*, *Ogden v. Bumble Bee Foods, LLC*, 292 F.R.D. 620, 626 (N.D. Cal. 2013) (plaintiff could assert claims for unpurchased products after making "a prima facie showing" of similarity between products where they had "similar or identical claims about Omega–3 content, as those labels may have misled class members in the same way that they allegedly misled [Plaintiff]" and, alternately, because they contained "essentially the same ingredients"); *Werdebaugh v. Blue Diamond Growers*, 2013 WL 5487236, at *13 (N.D. Cal. Oct. 2, 2013) (listing cases); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 291 (S.D.N.Y. 2015) (holding that Article III was satisfied where the named plaintiffs had purchased one type of Cold-EEZE product, and summarily denying defendant's motion to dismiss claims for lack of standing involving other Cold-EEZE products that class members may have purchased).

Even though the name of both products at issue in Plaintiffs' Complaint is "Deeply White + Peroxide," Defendants assert that the toothpaste and mouthwash are "too different to lump together."  *See* Def. 9; FAC ¶¶ 18-20 (depicting Deeply White + Peroxide toothpaste and mouthwash).  Not so.  Identical, and substantially similar representations are made on the Deeply White toothpaste and Deeply White mouthwash products:

| Deeply White + Peroxide Toothpaste | Deeply White + Peroxide Mouthwash |
|---|---|
| Product Name: "Deeply White + Peroxide" | Product Name: "Deeply White + Peroxide" |
| "Goes beyond surface stain whitening, to a radiant smile that shines from the inside out" | "Go beyond surface whitening, to a radiant smile that shines from the inside out" |
| "Whitens Deeper" "BELOW THE SURFACE: safely whitens below the enamel to help remove deep stains" | "Deeply Whitens" |

| "Active Dental Peroxide – the same enamel-safe whitening ingredient that dentists use" | "Deeply Whitens with the same enamel-safe ingredient dentists use" |
|---|---|

*See* FAC, Dkt. 18, ¶¶ 19-20.

The ingredients in both products are also identical.  The ingredient in both of the products in the "Deeply White + Peroxide" line that purportedly "Deeply Whiten[s]" is peroxide.  *Id.*   Indeed, the words "Deeply White" along with the ingredient name "Peroxide" make up the title of both of the products at issue.  As such, Defendants claim that the Deeply White products have different ingredients is disingenuous because both labels purport to deeply whiten with peroxide.  To support their flimsy claim that the two "Deeply White + Peroxide" products are different, Defendants try to distinguish the types of peroxide in the products – urea peroxide and hydrogen peroxide.  Def. 7.  But there is no distinction between the urea peroxide in Deeply White + Peroxide toothpaste, and the hydrogen peroxide in Deeply White + Peroxide mouthwash.  In fact, hydrogen peroxide is released from urea peroxide when combined with saliva.  FAC, Dkt. 18, fn. 11.[4]

Further, Defendants' advertising does not distinguish between the types of peroxide in the products.  For example, Defendants' website provides an illustration of how the "rapid-release" peroxide in the Deeply White + Peroxide products supposedly penetrates the enamel to reach the dentin layer of a tooth.  *See* FAC, Dkt. 18, ¶ 22.  Defendants' advertisement does not distinguish between the urea peroxide in the toothpaste and the hydrogen peroxide in the mouthwash.  *See id.*  Instead, the advertisement explains that you can find the same "rapid-release peroxide" in "REMBRANDT products such as Deeply White + Peroxide Whitening Mouthwash, [and in] Deeply White + Peroxide [] toothpaste…."  *Id.*   As such, Defendants' distinction between peroxides is meritless.  *See also Astiana*, 2012 WL 2990766, at

---

[4] The American Dental Association recognizes that "carbamide peroxide breaks down into hydrogen peroxide and urea, with hydrogen peroxide being the active bleaching agent."  *See* http://www.ada.org/en/about-the-ada/ada-positions-policies-and-statements/tooth-whitening-safety-and-effectiveness

*13 (finding sufficient similarity where the plaintiffs challenged the same labels on ice cream products even though the different ice cream ultimately had "different ingredients" because plaintiffs were "challenging the same basic mislabeling practice across different product flavors"); *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1005–06 (N.D. Cal. 2012) (plaintiff had standing to assert claims on behalf of purchasers of smoothies he did not buy because they involved similar misrepresentations about ingredients); *cf. Ivie v. Kraft Foods Global, Inc.*, 961 F. Supp. 2d 1033, 1047 (2013) (holding that plaintiffs alleging that products were not "natural" as represented provided little detail on the ingredients of the products the plaintiffs did not buy).  Thus, although persuasive authority teaches that the issues related to products not purchased are better left for class certification, in either case, Plaintiff Gregorio's claims on behalf of New York purchasers of Deeply White + Peroxide mouthwash should proceed past a motion to dismiss.  *See Werdebaugh*, 2013 WL 5487236, at *13.

## IV.  PLAINTIFFS HAVE ARTICLE III STANDING TO CHALLENGE DEFENDANTS' OVERALL MARKETING CAMPAIGN

Defendants argue that Article III "bars" Plaintiffs from challenging representations "outside the label" that "they neither saw nor relied upon." Def. 9-10.  Based on that argument, Defendants claim that the Court should strike allegations in the Complaint related to representations that are "outside the label" but that deliver the exact same message as the statements on the label.  Defendants' argument is incorrect for a number of reason.

*First*, as an initial matter, motions to strike are generally disfavored, and should typically be denied "unless it is clear that the matter sought to be stricken could have no possible bearing on the subject matter of the litigation."  *Rosales v. Citibank, Fed. Sav. Bank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001); *see also Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618, 632 (N.D. Cal. 2011)("Material should not be stricken from the pleadings, particularly before discovery has afforded

the parties the opportunity to determine the material's relevance to claims or defenses, if there is a possibility that it may have bearing on the litigation."). Rather, a plaintiff seeking to prove the deceptiveness of an advertisement "may rely on any evidence concerning that message, including advertisements to which he or she was not personally exposed." *See Fitzpatrick v. Gen. Mills, Inc.*, 263 F.R.D. 687, 694 (S.D. Fla. 2010), *vacated and remanded on unrelated issues*, 635 F.3d 1279 (11th Cir. 2011); *see also Musgrave v. ICC/Marie Callender's Gourmet Prods. Div.*, 2015 WL 510919, at *11 (N.D. Cal. Feb. 5, 2015) ("The Court disagrees with Defendant that these allegations are 'immaterial' to the case. . . . [E]ven though Plaintiff has not alleged that he personally relied on Defendant's website and advertising materials, these materials may be relevant to class certification and absent class members' reliance on Defendants' promotional materials.").

Here, the "non-label" forms of marketing in the Complaint are appropriate to establish that Defendants uniformly made common misrepresentations to all of the class members. *See Davis-Miller v. Auto. Club of S. Cal.*, 201 Cal. App. 4th 106, 125 (2011) ("An inference of classwide reliance cannot be made where there is no evidence that the allegedly false representations were uniformly made to all members of the proposed class"). Moreover, statements made on Defendants' website and television commercials are relevant to establish materiality at class certification. *See*, *e.g.*, FAC, Dkt. 18, ¶ 30 ("To truly understand the consumer and what they are looking for, REMBRANDT® spends a lot of time interacting with consumers to get to know their individual needs."). In addition, allegations related to common misrepresentations on television and online are relevant to Plaintiffs' claim for punitive damages. *See Kanfer v. Pharmacare US, Inc.*, 142 F. Supp. 3d 1091, 1108 (2015) (denying motion to strike "allegations regarding punitive damages and the statements on the [challenged product's] website."). Therefore, Plaintiffs' allegations concerning off-label statements are relevant and should not be stricken.

*Second*, Defendants do not challenge Plaintiffs' standing to pursue claims based on the misrepresentations on the Deeply White + Peroxide labels because they can't.  Plaintiffs sufficiently allege Article III, injury-in-fact standing.  Plaintiffs allege that they were injured when the paid an inflated price for the Deeply White + Peroxide products because Defendants misrepresented that they were effective for deep whitening.  FAC, Dkt. 18, ¶¶ 7-9, 118.  Monetary harm is a classic form of injury for constitutional purposes.  *See San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996) ("Economic injury is clearly a sufficient basis for standing.").  The fact that Defendants do not argue that Plaintiffs have suffered an economic injury ends the standing inquiry because the analysis of standing under Article III is limited to a determination of whether the named plaintiff has been injured and has individual standing.  *See Sosna v. Iowa*, 419 U.S. 393, 403 (1975) (once the named plaintiff establishes that she has suffered an injury that is "real and immediate, not conjectural or hypothetical," it "shift[s] the focus of examination from the elements of justiciability to the ability of the named representative to, fairly and adequately protect the interests of the class."); *see also In re VeriSign, Inc.*, 2005 WL 88969, at *4-5 (N.D. Cal. 2005) (named plaintiffs need only satisfy threshold standing, *i.e.*, that they suffered a concrete injury because of defendants' wrongdoing; they need not satisfy individual standing as to every injury alleged by the class); *In re Frito-Lay N. Am., Inc.*, 2013 WL 4647512, at *12.

Since Plaintiffs clearly have standing, Defendants' standing argument essentially conflates Article III standing with the requirements of Rule 23.  In other words, the issue of whether Plaintiffs may challenge "outside the label" statements, is better addressed under Rule 23(a)(3)'s typicality requirement.  *See, e.g., Cardenas*, 870 F. Supp. 2d at 988 (finding defendants argument that "Plaintiff lacks standing to pursue claims, including putative class claims, as to … products she did not purchase and advertising she did not view" are premature and more appropriately analyzed

through the an assessment of typicality and adequacy under Rule 23); *Bruno*, 280 F.R.D. at 530–31 (concluding that plaintiff had standing based on her purchase of defendants' liquid product and whether the plaintiff could represent a class of purchasers of defendants' gelcap products with similar but different representations "depends not on standing, but on an assessment of typicality and adequacy of representation" and would be analyzed "solely under Rule 23"); *Dorfman v. Nutramax Labs., Inc.*, 2013 WL 5353043, at *8 (S.D. Cal. Sept. 23, 2013) (contentions "regarding differences in the Cosamin products and/or product representations are best addressed at the class certification stage rather than the motion to dismiss stage").

*Third*, "[a]t the pleading stage . . . a plaintiff is 'not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements.'" *Morey v. NextFoods, Inc.*, 2010 WL 2473314, at *2 (S.D. Cal. June 7, 2010) (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009)); *see also Morgan v. AT&T Wireless Servs.*, Inc., 177 Cal. App. 4th 1235, 1262 (2009) ("[P]laintiffs need not allege the specific advertisements the individual plaintiffs relied upon; it is sufficient for the plaintiff to provide a representative selection of the advertisements or other statements to indicate the language upon which the implied misrepresentations are based."). Plaintiffs are especially not required to provide an unrealistic degree of specificity where, as here, the advertising statements deliver the same message. *See Rikos v. Procter & Gamble Co.*, 782 F. Supp. 2d 522, 535 (S.D. Ohio 2011). Defendants' representations on labels, online, and on television that characterize the efficacy of the Deeply White + Peroxide products were part of a comprehensive advertising campaign with one message – the products eliminate intrinsic or deep stains below the enamel surface:

| Deeply White + Peroxide toothpaste label | Deeply White + Peroxide mouthwash label | Online Statements | Statements in Television Commercials |
|---|---|---|---|
| Product Name: "Deeply White + Peroxide" | Product Name: "Deeply White + Peroxide" | Product Names: "Deeply White + Peroxide" | Product Names: "Deeply White + Peroxide" |
| "Goes beyond surface stain whitening, to a radiant smile that shines from the inside out" | "Go beyond surface whitening, to a radiant smile that shines from the inside out" | "Our rapid-release peroxide penetrates deep to effectively whiten teeth" | Illustrating scrubbing off surface stains to penetrate the tooth's surface |
| "Whitens Deeper" "BELOW THE SURFACE: safely whitens below the enamel to help remove deep stains" | "Deeply Whitens" | "[W]orks on contact to release deep stains inside teeth" | Image of a tooth so white it's clear, with the words "Deeply White" inside the tooth |
| "Active Dental Peroxide – the same enamel-safe whitening ingredient that dentists use" | "Deeply Whitens with the same enamel-safe ingredient dentists use" | "Our rapid-release liquid Hydrogen Peroxide starts working on contact to get to the intrinsic (deep) stains to visibly whiten teeth" | "the same enamel safe whitening ingredient dentists use to noticeably whiten teeth from the inside out" |

*Compare* FAC, Dkt. 18, ¶¶ 18-21 *with* ¶¶ 22-24. *Cf. Mohamed v. Kellog Co.*, 2015 WL 12459107 (S.D. Cal. Aug. 19, 2015) ("natural" statements made about garden burgers with processed soy were dissimilar from website statements about "real vegetables").

In that connection, false or misleading advertising campaigns need not "consist of a specifically-worded false statement repeated to each and every [member] of the plaintiff class." *In re First All. Mortg. Co.*, 471 F.3d 977, 992 (9th Cir. 2006). Indeed, "the class action mechanism would be impotent if a defendant could escape much of his potential liability for fraud by simply altering the wording or format of his misrepresentations across the class of victims." *Id.* As such, Defendants are liable not only for specific advertisements, but their entire marketing

campaign.  *See, e.g.*, *Morrison v. Trivita*, Inc., 2013 WL 1148070, at *5 (S.D. Cal. Mar. 18, 2013) ("Although Morrison does not specifically state which statements she found material to her decision to purchase Nopalea, that omission is not fatal because the promotional materials conveyed a common allegedly fraudulent message (namely, that Nopalea is a cure-all)."); *Hunter v. Nature's Way Prods., L.L.C.*, 2016 WL 4262188, at *15 (S.D. Cal. Aug. 12, 2016); *Jovel v. I-Health, Inc.*, 2013 WL 5437065, at *10-11 (E.D.N.Y. Sept. 27, 2013).  Plaintiffs have standing to challenge Defendants' false and misleading advertising campaign that induced them, and consumers like them to purchase the products at a premium price.[5]

Stated differently, the Court should reject Defendants' attempt to carve out certain advertisements from the well-pled class action complaint under the guise of "standing."  For example, in *Prata v. Superior Court*, 91 Cal. App. 4th 1128, 1143 (2001), the California Court of Appeal emphasized that to establish a violation of the UCL, the issue is "whether the program as a whole was likely to mislead."  As such, the Court of Appeal concluded that the trial court improperly focused on each advertisement and transaction.  *Id.* at 1143; *see also In re Oreck Corp. Halo Vacuum & Air Purifiers Mktg. & Sales Practices Litig.*, 2012 WL 6062047, at *15 (C.D. Cal. Dec. 3, 2012) (explaining "it would be unfair to require plaintiffs to recall and specify precisely which of the many advertisements they…relied upon. …. It suffices…to provide examples of advertisements similar to those they saw as long as [they] convey the core allegedly fraudulent message").  Given that the statements made on product labels, on websites, and in television commercials were nearly identical, as in *Prata*, the advertising campaign as a whole was likely to mislead consumers.

---

[5] Further, Plaintiffs need not prove the misrepresentation or omission was the "only", "sole," "predominant," or "decisive" cause of the injury-causing conduct.  Rather, they may show that the misrepresentation or omission was a substantial factor in their decision making process.  *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015); *In re Tobacco II Cases*, 46 Cal. 4th at 328.

*Fourth*, when misrepresentations and false statements are part of an extensive and long-term ad campaign, Plaintiffs need not demonstrate individualized reliance on specific advertisements.  *See Tobacco II*, 46 Cal. 4th at 328 (holding a plaintiff "is not required to necessarily plead and prove individualized reliance on specific misrepresentations or false statements where ... those misrepresentations and false statements were part of an extensive and long-term advertising campaign"); *Walter v. Hughes Commc'ns, Inc.*, 682 F. Supp. 2d 1031, 1045 (N.D. Cal. 2010) (element of reliance satisfied by complaint that "roughly" identified representations relied on). Here, Plaintiffs allege that Defendants engaged in common course of conduct,  a uniform and substantially similar advertising campaign which makes the same uniform false and misleading misrepresentations in all forms of advertisements. FAC, Dkt. 18, ¶¶ 22-24, 29.

Defendants' cited cases are inapposite or simply inapplicable.[6]  For example, in *Wilson v. Frito-Lay North America*, the Court held that plaintiffs lacked standing to bring claims on behalf of purchasers of products that they did not purchase because they "simply provide[d] a list of Non-Purchased Products, attach[ed] barely-legible labels . . . and assert[ed]that [the] labels are lawful or misleading."  961 F. Supp. 2d at 1141.  The court in *Wilson* held that plaintiffs' allegations were "not enough - the Court cannot just assume that every one of the Non-Purchased Products' labels is actionable in the same way as the more fully described Purchased

---

[6] Although Defendants challenge *Article III standing*, the majority of Defendants authority concerns *statutory standing* under the respective state statutes.  Any statutory standing argument would also fail.  For example, Defendants contend that Plaintiffs have failed to adequately plead claims under GBL sections 349 and 350 because they have not adequately alleged reliance or injury.  Def. 9, fn. 6.  That is wrong. Neither Section 349 nor 350 require proof of reliance.  *See Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012) ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law §§ 349 and 350 claims, it was error.  Justifiable reliance by the plaintiff is not an element of the statutory claim." (citation omitted)); *accord In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 409 (S.D.N.Y. 2015).

Products labels are." *Id.*  Similarly, in *Ivie*, 961 F. Supp. 2d at 1047, "the complaint provide[d] insufficient detail regarding the non-purchased products' nutritional contents and ingredients to allow the court to find standing" based on substantially similar misrepresentations.  Here, however, as detailed above, Plaintiffs allege that "Defendants' make representations on the Rembrandt website that are substantially similar to the ones they make on the Product labels that every purchaser sees at the shelf."  FAC, Dkt. 18, ¶¶ 22-24, 29.  As such, for each of the foregoing independently sufficient reasons, the Court should decline to strike Plaintiffs' allegations concerning substantially similar representations made "off-label."

## V.   PLAINTIFFS' WARRANTY CLAIMS DO NOT VIOLATE RULE 8

Defendants complain that Plaintiffs never identify which substantive warranty laws govern their claims.  Def. 10.  But then Defendants admit, a few sentences later, that "under well-established choice of law principles, the laws of the state where a customer resides and brought the Products at issue will typically govern that customer's claims."  Def. 11.  As such, Defendants were clearly able to understand which substantive warranty claims govern each of the Plaintiffs' claims in this case.

Furthermore, as discussed above, it would be premature to determine which state warranty laws are materially different than the laws of the Plaintiffs' resident states until a factual record is developed and analyzed at class certification.  For example, it would be premature to determine which express warranty laws are not materially different from California law – such that the California Plaintiffs could represent purchasers in those states in a class action.

## VI.   PLAINTIFFS BARBER AND BURKE'S IMPLIED WARRANTY CLAIMS SHOULD NOT BE DISMISSED

Defendants contend that Plaintiffs' implied warranty claims should be dismissed because supposedly Plaintiffs "have not alleged any facts showing that this purpose is particular to the individual Plaintiffs, or to explain how that 'particular purpose' differs from the ordinary purpose for which customers buy the Products."

Def. 11.  Defendants, however, misconstrue the allegations in the Complaint.

Contrary to Defendants' contention, Plaintiffs allege that they purchased the Deeply White + Peroxide products for a particular purpose – deeply whitening intrinsic stains.  FAC, Dkt. 18, ¶¶ 7-9.  For example, Plaintiff Barber stated she purchased the Deeply White Products based on claims that "the toothpaste would go below the surface to remove deep stains, that the toothpaste goes beyond surface stain whitening, and that it contained the same ingredient that dentists use." *Id.* ¶7.  Thus, it is apparent that Plaintiffs bought the Deeply White + Peroxide products for a particular purpose – deeply whitening below surface stains.  *See Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1295 n.2 (1995) (a "particular purpose differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business."); *see also Palmer v. A.H. Robins Co.*, 684 P.2d 187, 208-09 (Colo. 1984) (finding implied warranty for a particular purpose had been created where the plaintiff purchased an intrauterine device not only for the ordinary purpose of preventing pregnancy, but also for the particular purpose of being "safe."); *Filler v. Rayex Corp.*, 435 F.2d 336, 338 (7th Cir. 1970) (finding a breach of the implied warranty of fitness for a particular purpose where defendant, a sunglasses manufacturer, advertised baseball sunglasses that would give "instant eye protection," but lacked the safety features of shatterproof glass).

The purpose of deep whitening is distinct from the ordinary purpose of toothpaste – cleaning teeth.  The purpose of deep whitening is also distinct from the ordinary purpose of whitening toothpastes – whitening surface level or extrinsic stains.  Plaintiffs have adequately alleged that they bought Defendants' Deeply White + Peroxide purpose for the particular purpose of deeply whitening teeth.

Moreover, although Defendants protest that there is no distinction between the Deeply White + Peroxide and other whitening toothpastes, Plaintiffs' Complaint

clearly differentiates between the ordinary purpose of regular whitening products (removal of surface stains) and the particular purpose of the Deeply White + Peroxide products (removal of deep stains below the tooth's enamel).  *See* Def. 12. For example, Plaintiffs allege that Defendants boast: "So, how is Deeply White™ different than any other whitening products you can buy? Deeply White™ is the first all-in-one fluoride toothpaste to contain **Active Dental Peroxide**– the same enamel-safe ingredient dentists use to whiten deep stains, not just surface stains." FAC, Dkt. 18, ¶ 29.  In another example, the Deeply White + Peroxide labels state that "[u]nlike most whitening toothpastes, which only whiten on the surface, this daily-use deep whitening formula is expertly designed to provide double whitening action – ON THE SURFACE: gently polishes away surface stains without scratching the enamel – BELOW THE SURFACE: safely whitens below the enamel to help remove deep stains where they start.").  *Id.* at ¶ 19.  In fact, every label and advertisement touts the ability of the Deeply White + Peroxide products ability to remove deep stains with peroxide.  *See id.* at ¶¶ 18-24.

The cases Defendants cite are distinguishable because those cases do not involve products advertised with special qualities that fulfill a particular purpose. Rather, they involve ordinary goods without any additional, special claims made about those goods.  *See, e.g.*, *Smith v. LG Elecs. U.S.A., Inc.,* 2014 WL 989742, at *8 (N.D. Cal. Mar. 11, 2014) ("[P]laintiff has identified no particular purpose for which she purchased the washing machine. She purchased it to wash her laundry, which is the ordinary purpose of a washing machine.").  For example, in *Punian v. Gillette Co.*, 2016 WL 1029607 (N.D. Cal. Mar. 15, 2016), the plaintiffs alleged that using a battery "for ten years" is no different than the ordinary use of batteries where no ten-year guarantee is offered.  In other words, whether it be for ten years or for one year, the battery will always function as a battery.  Differently, here, the Deeply White + Peroxide products are advertised for the specific purpose of deeply whitening teeth.

Finally, whether or not there is an implied warranty of fitness for a particular purpose is a factual question to be decided by a jury. *See* U.C.C. § 2-315 cmt. 1 ("Whether or not this warranty arises in any individual case is basically a question of fact to be determined by the circumstances of the contracting."); *Taylor v. JVC Ams. Corp.*, 2008 WL 2242451, at *6 (D.N.J. May 30, 2008) (noting issues of fact related to an implied warranty of fitness claim are "not amenable to resolution on a motion to dismiss."); *Medallion Prods. v. H.C.T.V., Inc.*, 2007 WL 1022010, at *3 (N.D. Ill. Mar. 29, 2007) ("[that]…would require the resolution of factual issues, something not considered in ruling on a motion to dismiss."). Thus, Plaintiffs Barber and Burke's implied warranty claims should not be dismissed.[7]

## VII.   PLAINTIFF GREGORIO'S EXPRESS WARRANTY CLAIMS SHOULD NOT BE DISMISSED

Defendants contend that Plaintiff Gregorio's express warranty claim should be dismissed for failure to allege facts showing compliance with New York's notice requirements for warranty claims. Def. 13-14. Defendants are incorrect.

Defendants were supplied with a notice letter that notified Defendants that Plaintiffs were bringing CLRA claims for damages *as well as warranty claims* based on Defendants' misleading deeply whitens representations. FAC, Dkt. 18, ¶ 78; *id.* Exhibit A (providing Defendants with notice of CLRA violations as well as with notice concerning breaches of express and implied warranty on behalf of plaintiffs and "all persons similarly situated"). Such notice is more than sufficient under the liberal requirements under the New York Uniform Commercial Code to apprise Defendants of the conduct at issue. *See Atronic Int'l, GmbH v. SAI Semispecialists of Am., Inc.,* 2006 WL 2654827, at *9 (E.D.N.Y. Sept. 15, 2006) ("The notification need only alert the seller that the transaction is troublesome"); *Medinol Ltd. v.*

---

[7] Plaintiff Gregorio withdraws his claim for breach of implied warranty. *See* Def. 14 (pointing out that, under New York law, Plaintiff Gregorio must allege privity). California Plaintiffs Barber and Burke maintain their claims for breach of implied warranty on behalf of the class.

*Boston Sci. Corp.*, 346 F. Supp. 2d 575, 620 (S.D.N.Y. 2004) ("Notice need not be expressed in any magical formula such as a lawyer's letter."); *Cliffstar Corp. v. Elmar Indus., Inc*, 678 N.Y.S.2d 222, 223 (4th Dep't 1998) ("[T]he notice given by plaintiff had only to alert defendant that the transaction was troublesome and did not need to include a claim for damages or threat of future litigation.") (internal citations and quotations omitted).

Furthermore, the filing of the Complaint itself constitutes sufficient notice. *See Panda Capital Corp. v. Kopo Int'l*, 242 A.D.2d 690, 692 (N.Y. App. Div. 1997) ("This argument overlooks the fact that the complaint and subsequent amended complaint in this action themselves constituted such notice…"); *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, 2010 WL 2813788, at *72 (D.N.J. July 9, 2010) ("This Court agrees that under New York law, the filing of a complaint could constitute sufficient notice."); *Silverstein v. R.H. Macy & Co.*, 266 A.D. 5, 40 N.Y.S.2d 916, 920 (App. Div. 1943) ("[T]he commencement of this action would seem to afford sufficient notice of breach of warranty.").  Not surprisingly, Defendants have failed to identify any prejudice from the alleged lack of notice. Rather, Defendants' argument ignores the purpose of notice.  *See* N.Y. U.C.C. Law § 2-607, cmt. 4 "[T]he rule of requiring notification is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy."  *Paulino v. Conopco, Inc.*, 2015 WL 4895234, at *2 (E.D.N.Y. Aug. 17, 2015); *see also Panda Capital*, 242 A.D.2d at 692 (stating that whether notice was timely given within a reasonable time is a question of fact).

Additionally, the pre-litigation notice requirement does not apply to consumers bringing claims against remote manufacturers.  In *Cipollone v. Liggett Grp., Inc.*, 683 F. Supp. 1487, 1497–98 (D.N.J. 1988), the court rejected the claim that, under the UCC, a consumer must provide pre-litigation notice to a remote manufacturer pursuant to N.J. Stat. Ann. § 12A:2-607(3)(a) (West).  *See also Coyle*

*v. Hornell Brewing Co.*, 2010 WL 2539386, at *6 (D.N.J. June 15, 2010) ("[T]his Court has predicted more than once that the New Jersey Supreme Court would not require a buyer to give notice of breach of warranty to a remote manufacturer who is not the immediate seller under Section 2-607 before commencing suit.")  Because the language of N.Y. U.C.C. § 2-607(3)(a) is identical to the above referenced state U.C.C.s, a similar result should follow here.  *See Ebin v. Kangadis Foods, Inc.*, 2014 WL 737878, at *2 (S.D.N.Y. Feb. 25, 2014) (holding under New Jersey law, which is New York law verbatim, that a plaintiff "need not give notice of the breach against a manufacturer who was not the immediate seller of the product").  Moreover, "the latest version of the New York Pattern Jury Instructions, presumably applicable when this case goes to trial, recognizes the exception to the N.Y.-U.C.C. notice provision that is carved out."  *See In re Hydroxycut Mktg. & Sales Practices Litig.*, 2010 WL 1734948, at *3 (S.D. Cal. Apr. 26, 2010).  Specifically, the New York Pattern Jury Instructions state that "Notice of breach of warranty to the seller within a reasonable time after the buyer knew, or ought to have known, of the breach . . . was held inapplicable to . . . to an action by a remote purchaser against a manufacturer." N.Y. Pattern Jury Instr.--Civil 2:140 (citing *Greenman v. Yuba Power Prod., Inc.*, 59 Cal. 2d 57, 377 P.2d 897 (1963)).  Accordingly, Plaintiff Gregorio's express warranty claims should stand.

## VIII.  PLAINTIFFS HAVE STANDING TO SEEK INJUNCTIVE RELIEF

Defendants argue that Plaintiffs have not alleged a realistic threat of future injury from the Deeply White + Peroxide products because "they are aware of the Products' supposed shortcomings."  Def. 4-5.  But Judge Bernal, in the Central District of California, has already determined that toothpaste purchasers who bought toothpaste based on false "deep whitening" claims have standing to seek injunctive relief.  *See Dean*, 2015 WL 3999313, at *8.  In finding that a toothpaste purchaser had standing to bring claims for injunctive relief, Judge Bernal noted that "plaintiffs

in consumer class actions are harmed by the fact that mislabeled products remain on shelves." *Id.* (citing *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012). For example, in *Ries*, the court found that "'should plaintiffs encounter the denomination 'All Natural' on an AriZona beverage at the grocery store today, they could not rely on that representation with any confidence … [t]his is the harm California's consumer protection statutes are designed to redress.'" *Id.* (quoting *Ries*, 287 F.R.D. at 533); *see also Henderson v. Gruma Corp.*, 2011 WL 1362188, at *7, (C.D. Cal. Apr.11, 2011). Likewise, here, should Plaintiffs encounter claims related to "deep whitening" or peroxide and whitening, they could not rely on those representations any confidence. *See Dean*, 2015 WL 3999313, at *8. Since Plaintiffs and the class could continue to be confused and misled, Plaintiffs have standing to seek injunctive relief. *See id.*; *Ries*, 287 F.R.D. at 533; *Harris v. Las Vegas Sands L.L.C.*, 2013 WL 5291142, at *4 (C.D. Cal. Aug. 16, 2013) (finding "a likelihood of repeat injury for the class as a whole").

Defendants cited cases are distinguishable because the circumstances of those purchases would not lead a plaintiff to be misled or confused in making future purchases. For example, in *Delarosa v. Boiron, Inc.*, 2012 WL 8716658 (C.D. Cal. Dec. 28, 2012) (Staton, J.), the plaintiff had purchased a homeopathic product which the plaintiff alleged was wholly worthless because homeopathy was pseudoscience. As a result, when encountering the denomination "homeopathic" in the future that plaintiff would have no doubt that the product could not work. But toothpaste and whitening representations are different. What if Defendants added more peroxide? Could that deeply whiten even though the current formulation does not? Could peroxide in toothpaste whiten surface stains even though it cannot penetrate deeply into teeth? In short, unlike a homeopathic product, the representations about whitening, deep whitening, and peroxide could continue to confuse and mislead Plaintiffs and the class members they seek to represent.

Defendants other cited cases are distinguishable for similar reasons. Unlike in *Walsh v. Nevada Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006), where an employee would not return to work for an employer, Plaintiffs and the putative class members have a continued interest in deep whitening. FAC, Dkt. 18, at ¶¶ 25-31 (explaining that consumers want whiter teeth). Similarly, in *Morgan v. Wallaby Yogurt Company, Inc.*, 2014 WL 1017879, at *5-6 (N.D. Cal. March 13, 2014), the plaintiff had learned the true nature of evaporated cane juice such that they could not be confused by its sugar content in the future. Differently, here, Plaintiffs and the class members are at risk of future confusion with respect to deep whitening and peroxide claims. *See, e.g.*, *Lanovaz v. Twinings N. Amer., Inc.*, 2014 WL 1652338 (N.D. Cal. Apr. 24, 2014) (certifying Rule 23(b)(2) injunctive relief class where plaintiff alleged that defendant had misbranded their tea products with misleading antioxidant claims). Because Plaintiffs are at risk for confusion in the future, they have standing to seek injunctive relief. *Ries*, 287 F.R.D. at 533; *Dean*, 2015 WL 3999313, at *8.[8]

## IX. CONCLUSION

For the foregoing reasons, Defendants' motion should be denied in its entirety. If, however, the Court dismisses any part of their Complaint, Plaintiffs request leave to amend. *See, e.g.*, *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983).

---

[8] Additionally, Defendants' draconian take on injunctive relief would eviscerate the purpose of states' consumer protection statutes, particularly in situations where a defendant continues to sell the product. *See Henderson*, 2011 WL 1362188, at *7–8. As the court in *Henderson* reasoned, the "once bitten, twice shy" approach that the defendant advocates would serve to defeat the objective of California consumer protection laws. *Id.*; *see also Dean*, 2015 WL 3999313, at *8

Dated:  February 8, 2017

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: _____ */s/ L. Timothy Fisher* _____
                        L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Annick M. Persinger (State Bar No. 272996)
Yeremey O. Krivoshey (State Bar No.295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
              apersinger@bursor.com

**VOZZOLO LLC**
Antonio Vozzolo (*pro hac vice*)
345 Route 17 South
Upper Saddle River, New Jersey 07458
Phone: 201-630-8820
Fax: 201-604-8400
avozzolo@vozzolo.com

*Counsel for Plaintiffs*