RICHARD B. GOETZ (S.B. #115666)
rgoetz@omm.com
MATTHEW D. POWERS (S.B. #212682)
mpowers@omm.com
HANNAH Y. CHANOINE (*pro hac vice*)
hchanoine@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELANIE BARBER, KI BURKE, and JOSEPH GREGORIO on Behalf of Themselves and all Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>JOHNSON & JOHNSON, MCNEIL-PPC, INC., JOHNSON & JOHNSON CONSUMER, INC., and RANIR LLC,<br><br>Defendants. | Case No. 8:16-cv-1954-JLS-JCG<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR STRIKE PORTIONS OF THE FIRST AMENDED COMPLAINT PURSUANT TO RULES 12(b)(1), 12(b)(6), AND 12(f)**<br><br>HON. JOSEPHINE L. STATON<br><br>Date:  March 10, 2017<br>Time:  2:30 p.m.<br>Courtroom:  10A |

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION .................................................................................... 1

II.     THERE IS NO RISK OF FUTURE INJURY FROM THE
        PRODUCTS HERE AT ISSUE ................................................................ 2

III.    THE IMPLIED WARRANTY CLAIMS FAIL ......................................... 5

IV.     PLAINTIFFS MUST PLEAD WHICH LAW(S) APPLY TO THEIR
        "WARRANTY" CLAIMS .......................................................................... 7

V.      MR. GREGORIO'S NEW YORK WARRANTY CLAIMS FAIL ................. 8

VI.     MOUTHWASH AND TOOTHPASTE ARE NOT
        "SUBSTANTIALLY SIMILAR" ............................................................ 11

VII.    PLAINTIFFS CANNOT SUE OVER ADS THEY NEVER SAW ............. 14

VIII.   PLAINTIFFS' OPPOSITION CONFIRMS THAT THEIR
        NATIONWIDE "WARRANTY" CLASS SHOULD BE STRICKEN ........ 18

IX.     CONCLUSION ....................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allen v. Hylands, Inc.*,
   2012 WL 1656750 (C.D. Cal. May 2, 2012).................................................13

*Am. Suzuki Motor Corp. v. Superior Court*,
   37 Cal. App. 4th 1291 (1995).................................................................6

*Ang v. Bimbo Bakeries*,
   2014 WL 1024182 (N.D. Cal. Mar. 13, 2014)...................................................13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................7

*Astiana v. Dreyer's Grand Ice Cream, Inc.*,
   2012 WL 2990766 (N.D. Cal. July 20, 2012)..................................................14

*Baughn v. Honda Motor Co.*,
   727 P.2d 655 (Wash. 1986).....................................................................23

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................7

*Berger v. Home Depot USA, Inc.*,
   741 F.3d 1061 (9th Cir. 2014)............................................................12, 22

*Betts v. Reliable Collection Agency, Ltd.*,
   659 F.2d 1000 (9th Cir. 1981)..............................................................12

*Bruno v. Quten Research Inst., LLC*,
   280 F.R.D. 524 (C.D. Cal. 2011)............................................................16

*Bruton v. Gerber Prod. Co.*,
   961 F. Supp. 2d 1062 (N.D. Cal. 2013)..................................................15, 18

*Cardenas v. NBTY, Inc.*,
   870 F. Supp. 2d 984 (E.D. Cal. 2012)......................................................16

*CBS Inc. v. Ziff-Davis Publ'g Co.*,
   75 N.Y.2d 496 (1990).........................................................................23

*Cipollone v. Liggett Grp., Inc.*,
   683 F. Supp. 1487 (D.N.J. 1988)...........................................................11

*Circle Click Media LLC v. Regus Mgmt. Grp. LLC*,
   2016 WL 1048046 (N.D. Cal. Mar. 11, 2016)............................................12, 22

*City of L.A. v. Lyons*,
   461 U.S. 95 (1983).............................................................................2

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*Clemens v. DaimlerChrysler Corp.*,
   534 F.3d 1017 (9th Cir. 2008) ............................................................ 8

4

5

*Coleman v. Bos. Sci. Corp.*,
   2011 WL 3813173 (E.D. Cal. Aug. 29, 2011) .................................... 23

6

*Coyle v. Hornell Brewing Co.*,
   2010 WL 2539386  (D.N.J. June 15, 2010) ........................................ 11

7

8

*Darisse v. Nest Labs, Inc.*,
   2016 WL 4385849 (N.D. Cal. Aug. 15, 2016) .................................... 21

9

*Davidson v. Kimberly-Clark Corp.*,
   2014 U.S. Dist. LEXIS 176394 (N.D. Cal. Dec. 19, 2014) ............... 2-3

10

*Davison v. Kia Motors Am. Inc.*,
   2015 WL 3970502 (C.D. Cal. June 29, 2015).................................... 19

11

12

*Dean v. Colgate-Palmolive Co.*,
   2015 WL 3999313 (C.D. Cal. June 17, 2015)...................................... 4

13

*Delarosa v. Boiron, Inc.*,
   2012 WL 8716658 (C.D. Cal. Dec. 28, 2012) ............................. 3, 4, 5

14

15

*Dorfman v. Nutramax Labs., Inc.*,
   2013 WL 5353043 (S.D. Cal. Sept. 23, 2013) ............................... 4, 16

16

17

*Durell v. Sharp Healthcare*,
   183 Cal. App. 4th 1350 (2010).......................................................... 15

18

*Dysthe v. Basic Research, LLC*,
   2011 WL 5868307 (C.D. Cal. June 13, 2011)................................ 13-14

19

20

*Ebin v. Kangadis Foods*,
   2014 WL 737878 (S.D.N.Y. Feb. 25, 2014) ...................................... 11

21

*Fantasy, Inc. v. Fogerty*,
   984 F.2d 1524 (9th Cir. 1993) .......................................................... 19

22

23

*Filler v. Rayex Corp.*,
   435 F.2d 336 (7th Cir. 1970) .............................................................. 6

24

25

*Frenzel v. Aliphcom*,
   2014 U.S. Dist. LEXIS 177880 (N.D. Cal. Dec. 29, 2014) ............... 19

26

*Frezza v. Google Inc.*,
   2013 WL 1736788 (N.D. Cal. Apr. 22, 2013) ................................... 19

27

28

REPLY ISO DEFS.'
MOTION TO DISMISS
8:16-CV-1954-JLS-JCG

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*Gale v. IBM*,
    781 N.Y.S.2d 45 (N.Y. App. Div. 2004)...........................................................15

4

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) ..........................................................................................19

5

6

*Glenn v. Hyundai Motor Am.*,
    2016 WL 3621280 (C.D. Cal. June 24, 2016)..............................................7, 19

7

8

*Granfield v. NVIDIA Corp.*,
    2012 WL 2847575 (N.D. Cal. July 11, 2012) ...................................................13

9

*Hunter v. Nature's Way Prods. LLC*,
    2016 WL 4262188 (S.D. Cal. Aug. 12, 2016) ...................................................16

10

11

*In re Ferrero Litig.*,
    794 F. Supp. 2d 1107 (S.D. Cal. 2011) ............................................. 15-16, 17, 18

12

13

*In re Ford Motor Co. E350 Van Prods. Liab. Litig.*,
    2010 WL 2813788 (D.N.J. July 9, 2010) ..........................................................10

14

*In re Frito-Lay N. Am., Inc. All Natural Litig.*,
    2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ...................................................11

15

16

*In re Oreck*,
    2012 WL 6062047 (C.D. Cal. Dec. 3, 2012) .....................................................18

17

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009)........................................................................................17

18

19

*In re VeriSign, Inc.*,
    2005 WL 88969 (N.D. Cal. Jan. 13, 2005) ........................................................15

20

*Ingle v. Marked Tree Equip. Co.*,
    428 S.W.2d 286 (Ark. 1968) ..............................................................................21

21

22

*Ivie v. Kraft Foods Glob., Inc.*,
    961 F. Supp. 2d 1033 (N.D. Cal. 2013)............................................11, 15, 16, 18

23

24

*Koh v. S.C. Johnson & Son*,
    2010 WL 94265 (N.D. Cal. Jan. 6, 2010) ..........................................................14

25

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011)........................................................................................15

26

27

*Larsen v. Trader Joe's Co.*,
    2012 WL 5458396,  (N.D. Cal. June 14, 2012) .................................................13

28

iv

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*Mahoney v. Endo Health Sols.*,
    2016 WL 3951185 (S.D.N.Y. July 20, 2016) ....................................... 8

4

5

*Major v. Ocean Spray Cranberries, Inc.*,
    2013 U.S. Dist. LEXIS 81394 (N.D. Cal. June 10, 2013) ................................. 12

6

*Mariner Water Renaturalizer, Inc. v. Aqua Purification Sys., Inc.*,
    665 F.2d 1066 (D.C. Cir. 1981) ......................................................... 21

7

8

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012)............................................... 18, 20, 23

9

10

*McCrary v. Elations Co., LLC*,
    2013 WL 6403073 (C.D. Cal. July 12, 2013) ......................... 16, 17, 18

11

*Melgar v. Zicam LLC*,
    2016 WL 1267870 (E.D. Cal. Mar. 31, 2016) .................................... 22

12

13

*Miller v. Ghirardelli Chocolate Co.*,
    912 F. Supp. 2d 861 (N.D. Cal. 2012)............................................... 13

14

*Mohamed v. Kellogg*,
    2015 WL 12469107 (S.D. Cal. Aug. 19, 2015) .......................... 2, 15, 18

15

16

*Morrison v. TriVita, Inc.*,
    2013 WL 1148070 (S.D. Cal. Mar. 19, 2013)...................................... 18

17

18

*Ogden v. Bumble Bee Foods, LLC*,
    292 F.R.D. 620 (N.D. Cal. 2013) ...................................................... 14

19

*Palmer v. A.H. Robins Co.*,
    684 P.2d 187 (Colo. 1984) ............................................................... 6

20

21

*Panda Capital Corp. v. Kopo Int'l*,
    242 A.D.2d 690 (N.Y. App. Div. 1997)........................................... 9-10

22

*Paulino v. Conopco*,
    2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015) .................................... 10

23

24

*Pfizer Inc. v. Superior Court*,
    182 Cal. App. 4th 622 (2010)........................................................ 17-18

25

*Phillips v. Apple Inc.*,
    2016 WL 1579693 (N.D. Cal. Apr. 19, 2016) ...................................... 4

26

27

*Prata v. Superior Court*,
    91 Cal. App. 4th 1128 (2001)........................................................... 18

28

v

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Punian v. Gillette*,
   2016 WL 1029607 (N.D. Cal. Mar. 15, 2016) ..................................................5, 6

*Raymonde v. Mirant Cal., LLC*,
   2010 WL 366643 (N.D. Cal. Jan. 25, 2010) .......................................................8-9

*Rikos v. Procter & Gamble Co.*,
   2012 WL 641946 (S.D. Ohio Feb. 28, 2012) .................................................20, 23

*Route v. Mead Johnson Nutrition Co.*,
   2013 WL 658251 (C.D. Cal. Feb. 21, 2013) .........................................................20

*Sanders v. Apple*,
   672 F. Supp. 2d 978 (N.D. Cal. 2009) .............................................................20, 23

*Schramm v. J.P. Morgan Chase Bank, NA*,
   2011 WL 5034663,  (C.D. Cal. Oct. 19, 2011) .....................................................22

*Sevidal v. Target Corp.*,
   189 Cal. App. 4th 905 (2010) ................................................................................18

*Silverstein v. R.H. Macy & Co.*,
   40 N.Y.S.2d 916, 920 (App. Div. 1943) ...............................................................10

*Singleton v. Fifth Generation, Inc.*,
   2016 WL 406295 (N.D.N.Y. Jan. 12, 2016) .....................................................9, 11

*Smedt v. Hain Celestial Grp., Inc.*,
   2014 WL 2466881 (N.D. Cal. May 30, 2014) ......................................................14

*Smith v. LG*,
   2014 WL 989742 (N.D. Cal. Mar. 11, 2014) ......................................................5-6

*Sosna v. Iowa*,
   419 U.S. 393 (1975) ..............................................................................................15

*Stephenson v. Neutrogena Corp.*,
   2012 WL 8527784 (N.D. Cal. July 27, 2012) ......................................................14

*T&M Solar & Air Conditioning v. Lennox*,
   83 F. Supp. 3d 855 (N.D. Cal. 2015) ..................................................................5, 6

*Tomasino v. Estee Lauder*,
   44 F. Supp. 3d 251 (E.D.N.Y. 2014) ..........................................................9, 11, 21

*Wilson v. Frito-Lay N. Am., Inc.*,
   961 F. Supp. 2d 1134 (N.D. Cal. 2013) ...............................................2, 15, 16, 18

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

## STATUTES

N.Y. Per. Prop. Law § 130 (*repealed* 1964)................................................................10

N.Y. U.C.C. § 2-607(3)(a)................................................................8

## RULES

Fed. R. Civ. P. 12................................................................1, 19

Fed. R. Civ. P. 12(f)................................................................18

Fed. R. Civ. P. 23................................................................16

Fed. R. Civ. P. 8................................................................7, 8

Fed. R. Civ. P. 9(b)................................................................18

## I.     **INTRODUCTION**

In their Opposition, Plaintiffs seem to suggest that Defendants' motion is inappropriate because the motion challenges some (but not all) of Plaintiffs' claims, or that the invalid claims alleged here should proceed simply because this case is pleaded as a class action.  (Opp. at 1, 3.)  But trimming legally insufficient claims is a core function of a Rule 12 motion, even in a class action.  And that is precisely what the Court should do here.  As this case proceeds, the parties will thoroughly explore the whitening benefits that these Products can and do provide.  However, Plaintiffs are not entitled to pursue claims that are legally deficient on their face simply because other portions of this case may proceed.

Most of Plaintiffs' arguments should be rejected out of hand.  Plaintiffs' policy arguments against dismissing their injunctive relief claims (for example) have been rejected by multiple courts, and their contention that they might be injured if Defendants create new, reformulated products makes no sense—Plaintiffs did not buy those new products (they do not exist) and whether those new products (or their marketing) might mislead Plaintiffs in the future is not at issue.

Plaintiffs' attempt to save their implied warranty claims fails as well—the "particular" purposes Plaintiffs identify are identical to the Products' "ordinary" purpose, and courts have rejected similar attempts to conflate "ordinary" and "particular" purposes.  Mr. Gregorio's warranty claims should also be dismissed because he has failed to allege privity (as to the implied warranty claim) and, apparently, cannot plead the statutory notice required for his express warranty claim.  In addition, Mr. Gregorio's Mouthwash claims fail because Mr. Gregorio did not buy that product and Plaintiffs have not (and cannot) show that the Toothpaste and Mouthwash are "substantially similar."

Next, Plaintiffs spend pages of the Opposition arguing that, since they have alleged reliance on the Products' labels, they should be allowed to assert claims over other statements—in ads and marketing materials—that they did not

1    personally see. (Opp. at 11-18.)  But as multiple courts have held in precisely these

2    circumstances, allowing a plaintiff challenge unseen statements "would be an

3    affront to state and federal standing rules."  *Wilson v. Frito-Lay N. Am., Inc.*, 961 F.

4    Supp. 2d 1134, 1143 (N.D. Cal. 2013) (dismissing claims as to a website plaintiff

5    never visited, while permitting claims based on product labels); *see also Mohamed*

6    *v. Kellogg*, 2015 WL 12469107, at *2, *3, *5 (S.D. Cal. Aug. 19, 2015) (dismissing

7    claims regarding non-label advertising where plaintiff reviewed only the labels of

8    accused products).  If Plaintiffs can truthfully allege they viewed non-label

9    advertisements and were induced to purchase the Products as a result of those

10   advertisements, then they should plead those facts.  But since Plaintiffs have not

11   done so, the Court should dismiss all claims asserted as to these non-label

12   advertisements.

13       Finally, Plaintiffs' own allegations show that a nationwide "warranty" class

14   is untenable.  State warranty laws vary materially—indeed, Plaintiff Gregorio has

15   abandoned one of his claims because he cannot meet New York's privity

16   requirements.  (Opp. at 21 n.7.)  There is no reason to defer this issue until class

17   certification.  Since Plaintiffs concede that the warranty laws of each customers'

18   home state will apply to their claims (*id.* at 18), choice-of-law issues will not be

19   clarified by further discovery.  And Plaintiffs' assertion that they ***might*** be able to

20   plead some other kind of class (*e.g.*, a narrower "grouping" of states (Opp. at 4))

21   should be rejected—no such class is pleaded, and if Plaintiffs intend to proceed on

22   that basis they should plead those classes and identify plaintiffs to represent them.

23       In short, Defendants' Motion should be granted in full.

24   **II.    THERE IS NO RISK OF FUTURE INJURY FROM THE PRODUCTS**

25   **AT ISSUE HERE**

26       As set out in Defendants' motion (Mot. at 4-5), plaintiffs who have no risk of

27   future injury cannot assert claims for injunctive relief.  *City of L.A. v. Lyons*, 461

28   U.S. 95, 109 (1983); *Davidson v. Kimberly-Clark Corp.*, 2014 U.S. Dist. LEXIS

REPLY ISO DEFS.'
MOTION TO DISMISS
8:16-CV-1954-JLS-JCG

176394, at *10-12 (N.D. Cal. Dec. 19, 2014); *Delarosa v. Boiron, Inc.*, 2012 WL 8716658, at *4 (C.D. Cal. Dec. 28, 2012) (Staton, J.) (same).  Plaintiffs' primary rejoinder is that Judge Bernal reached a different conclusion in a case involving whitening products made by Colgate.  (Opp. at 23-25.)  But as Judge Bernal acknowledged, "district courts in this circuit have split on how to handle this issue." *Dean v. Colgate-Palmolive Co.*, 2015 WL 3999313, at *8 (C.D. Cal. June 17, 2015); *see also* Mot. at 5 n.2 (noting split).  In *Delarosa*, this Court analyzed the issue at length, distinguished the cases Plaintiffs rely on here, and dismissed identical claims for lack of standing.  2012 WL 8716658, at *3-6.  Under this and the many other cases that have reached the same conclusion, Plaintiffs' injunctive relief claims must be dismissed because they can allege no real risk of future injury.

In their Opposition, Plaintiffs argue *Delarosa* should not apply because Defendants could theoretically create new, reformulated products at some point in the future.  (Opp. at 24 ("What if Defendants added more peroxide?  Could that deeply whiten even though the current formulation does not?"); ("[U]nlike a homeopathic product, the representations about whitening, deep whitening, and peroxide could continue to confuse and mislead Plaintiffs and the class members.").)  But these hypothetical reformulated products are not at issue—they do not even exist.  Here, Plaintiffs contend they were misled by the marketing of two existing products (the Toothpaste and Mouthwash) and that they suffered an economic loss when they bought those Products.  (FAC ¶¶ 7-9.)  The injury Plaintiffs claim they suffered (paying for the Products) cannot occur in the future because Plaintiffs do not allege they would buy those Products again.  (*Id.*)  Whether some ***future*** set of new products, with different ingredients (and different marketing claims), could "mislead" Plaintiffs is not at issue.  It is unclear what sort of "injunction" Plaintiffs might seek to address this risk of future "injury" from these new products—do Plaintiffs seriously contend the Court should oversee Defendants' product development and marketing efforts to ensure that whatever

REPLY ISO DEFS.'
MOTION TO DISMISS
8:16-CV-1954-JLS-JCG

new products Defendants develop meet Plaintiffs' standards?  Since there is literally no risk that Plaintiffs could suffer another injury from the Products at issue in this case, their injunctive relief claims must be dismissed.[1]

Other courts have reached the same conclusion in similar circumstances.  In *Phillips v. Apple Inc.*, 2016 WL 1579693, at *8-10 (N.D. Cal. Apr. 19, 2016), for example, the plaintiffs claimed a new phone operating system increased the data usage on their smartphones.  *Id.* at *1-2.  But since plaintiffs did not intend to buy phones with that same operating system again, the court dismissed their claims for injunctive relief.  *Id.* at *8-10.  The *Phillips* court rejected the same cases Plaintiffs cite here—*e.g.*, *Dean, Ries*, and *Henderson*—and reiterated that "plaintiffs who were induced into purchasing a product through deceptive advertising must allege intent to purchase the deceptively-advertised product in the future in order to have standing to seek injunctive relief."  *Id.* at *9; *see also Dorfman v. Nutramax Labs., Inc.*, 2013 WL 5353043, at *9 (S.D. Cal. Sept. 23, 2013) (dismissing injunctive relief claim for allegedly ineffective glucosamine supplement because the "Complaint contain[ed] no allegations suggesting that Plaintiff would consider purchasing another Cosamin product manufactured by Nutramax").

In short, unless Plaintiffs would consider buying the Products in the future (which they do not allege), they lack standing and their injunctive relief claims should be dismissed.  *Delarosa*, 2012 WL 8716658, at *4 ("Because Plaintiff does

---

[1] Plaintiffs also argue *Delarosa* is distinguishable because "the circumstances of those purchases" of the homeopathic remedies in that case "would not lead a plaintiff to be misled or confused in making future purchases."  (Opp. at 24.) Specifically, Plaintiffs contend that "when encountering the denomination 'homeopathic' in the future," the *Delarosa* "plaintiff would have no doubt that the product could not work," whereas here the "toothpaste and whitening representations are different" and Defendants might in the future "add[] more peroxide."  (*Id.*)  But, first, Plaintiffs are clear in their FAC that (according to Plaintiffs) toothpaste and mouthwash products *cannot* deliver "deep whitening" under any circumstances.  (FAC ¶ 38.)  And second, *Delarosa* did not hinge on whether the products at issue could be reformulated to provide the advertised benefits.  2012 WL 8716658, at *4-6.  The claims in *Delarosa* failed because—just as here—plaintiffs would not continue to buy the *products at issue*, thus eliminating the risk of repetition of the injury the plaintiffs claimed to have suffered.  *Id.* at *4.

1   not believe the product works and does not intend to purchase it again, there is not a

2   sufficient likelihood that [she] will again be wronged in a similar way.").

3   ### III.   THE IMPLIED WARRANTY CLAIMS FAIL

4          Plaintiffs' attempt to save their implied warranty claims should be rejected as

5   well.  In their Opposition, Plaintiffs try to blur the meaning of "particular purpose"

6   and "ordinary purpose"—specifically, Plaintiffs argue they purchased the Products

7   for the "particular purpose" of "deeply whitening below surface stains."  (Opp. at

8   18-19) ("Plaintiffs bought the … products for a particular purpose – deeply

9   whitening below surface stains.").  But that is the same ordinary purpose the

10  Products were advertised to provide: "deep whitening."  (FAC ¶¶ 7-9.)

11         As is set out in Defendants' opening brief, only a purpose other than the

12  advertised purpose of a product—that is, a non-customary use—can be a "particular

13  purpose" for implied warranty purposes.  (Mot. at 11-13.)  That is why multiple

14  courts have rejected similar attempts to transform advertising statements about the

15  benefits or features of a product into a "particular purpose."  *See, e.g.*, *Smith v. LG*,

16  2014 WL 989742, at *7 (N.D. Cal. Mar. 11, 2014) (advertising washing machine as

17  "high-speed" did not go beyond the ordinary purpose of washing machines—to

18  wash clothes); *Punian v. Gillette*, 2016 WL 1029607, at *1-2, 18 (N.D. Cal.

19  Mar. 15, 2016) (10-year life guarantee did not create "particular purpose" different

20  from the ordinary purpose of batteries); *T&M Solar & Air Conditioning v. Lennox*,

21  83 F. Supp. 3d 855, 861, 877 (N.D. Cal. 2015) (solar panels custom-made for

22  particular houses did not go beyond ordinary purpose of solar panels).

23         In *Smith*, for example, the plaintiff bought a washing machine because it was

24  advertised to have high-efficiency washing, extra-high spin speeds, and a system to

25  minimize noise.  2014 WL 989742, at *1.  The plaintiff argued that while washing

26  clothes was the "ordinary purpose" of the machine, the advertised benefits of high-

27  speed and efficient washing were a "particular purpose" that justified an implied

28  warranty claim.  *Id.* at *8.  But as the court explained, "high-speed and efficient

REPLY ISO DEFS.'
MOTION TO DISMISS
8:16-CV-1954-JLS-JCG

washing" were simply aspects of the ordinary purpose of a washing machine (*i.e.*, washing clothes). In other words, to plead a "particular purpose" claim, the plaintiff had to allege she bought the product for something other than washing clothes and that LG should have known she would use the product for that "particular" purpose. *Id.* at *7-8. The logic of *Smith* applies with equal force here: advertising a machine as "high-speed" did not create a "particular purpose," and promoting whitening products as "deeply whitening" does not do so either. *See also Punian*, 2016 WL 1029607, at *18; *T&M Solar*, 83 F. Supp. 3d at 877.[2]

The other authorities Plaintiffs cite either support Defendants' argument or are distinguishable. (Opp. at 19.) In *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1295 n.2 (1995), the Court rejected a "particular purpose" claim because the plaintiff (who purchased a truck that rolled over) failed to identify any purpose for the truck other than driving it. *Id*. And *Palmer v. A.H. Robins Co.* involved a legitimate "particular purpose"—the plaintiff used a birth-control device not only for birth control but also to avoid a risk of stroke and other health issues and, unlike here, specifically informed her physician she was using the device for that particular purpose). 684 P.2d 187, 209 (Colo. 1984).[3]

Finally, Plaintiffs suggest their implied warranty claim should survive because whether a purpose is "particular" is a question of fact. (Opp. at 21.) That

---

[2] Plaintiffs argue that *Smith*, *Punian*, and *T&M Solar* did "not involve products advertised with special qualities that fulfill a particular purpose." (Opp. at 20.) But the "special qualities" at issue in those cases are directly analogous to the claims here. *Smith* involved a washing machine advertised as having special high-speed and efficiency features. 2014 WL 989742, at *1. The plaintiff in *Punian* bought batteries that were advertised as having better technology and longer life than other batteries. *Punian*, 2016 WL 1029607, at *18. And the plaintiffs in *T&M Solar* bought solar panels because they were advertised as being especially suited for their homes. 83 F. Supp. 3d at 877. And none of those advertised special qualities qualified as a "particular purpose."

[3] Plaintiffs also on rely on *Filler v. Rayex Corp*., a decades-old case from another circuit that applied Illinois law. 435 F.2d 336 (7th Cir. 1970). The logic of this opinion is not spelled out in any detail, but to the extent it supports Plaintiffs' position, it is contradicted by the many recent decisions cited above (and in Defendants' Opening Brief).

REPLY ISO DEFS.'
MOTION TO DISMISS
8:16-CV-1954-JLS-JCG

is the problem: Plaintiffs have not pleaded facts (as opposed to conclusory boilerplate) to show they bought the Products for some "particular purpose," and the facts they do plead (*e.g.*, that the Products were openly advertised as providing "deep whitening") show that no such "particular purpose" exists. At this stage, Plaintiffs must plead facts that could support the claims they are asserting. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). Simply reciting the boilerplate elements of a "particular purpose" claim is insufficient and cannot be used to refute the facts actually pleaded—which, again, show that Plaintiffs bought the Products for the same ordinary reason anyone buys whitening products: to whiten their teeth. *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements supported by mere conclusory statements."). Plaintiffs' "particular purpose" implied warranty claim fails as a matter of law and should be dismissed with prejudice.

## IV. PLAINTIFFS MUST PLEAD WHICH LAW(S) APPLY TO THEIR "WARRANTY" CLAIMS

Under Rule 8, Plaintiffs were required to specify which states' warranty laws they seek to enforce. (Mot. at 10-11.) Since they did not do so, their "warranty" claims (brought on behalf of a putative nationwide class) should be dismissed as a matter of law. *See*, *e.g.*, *Glenn v. Hyundai Motor Am.*, 2016 WL 3621280, at *13 (C.D. Cal. June 24, 2016) (dismissing nationwide unjust enrichment claim where it was "unclear whether Plaintiffs are asserting an unjust enrichment claim under California law for all Plaintiffs, whether each Plaintiff is asserting an unjust enrichment claim under his or her home state's law, or something else.")(Carter, J.).

Plaintiffs suggest that, because Defendants guessed correctly which laws Plaintiffs intended to invoke (the laws of the home state of each customer in the proposed class), there was no violation of Rule 8. (Opp. at 18 ("Defendants were clearly able to understand which substantive warranty claims govern each of the

1   Plaintiffs' claims in this case").)  But what Defendants were "able to understand" is

2   not the point—Plaintiffs are required to make a clear and plain statement of their

3   claims, including the substantive law they intended to assert.  It was far from

4   obvious from Plaintiffs' FAC that they intended to assert that the laws of each

5   customer's home state will apply to those customers' claims—after all, as discussed

6   in more detail below, Plaintiffs also purport to represent a single nationwide

7   "warranty" class.  (FAC ¶¶ 54, 60.)  Defendants should not have to "figure out"

8   which laws Plaintiffs contend should apply—that defeats the entire purpose of

9   notice pleading, both for Defendants and for potential class members considering

10  whether the case applies to them.  *E.g.*, *Clemens v. DaimlerChrysler Corp.*, 534

11  F.3d 1017 (9th Cir. 2008) (discussing when plaintiffs can rely on filing of prior

12  class action to toll statute of limitations).  If Plaintiffs intend to pursue "warranty"

13  claims under the laws of the states where each customer resides (as they now

14  contend), they should plead such claims in their complaint.  Since they have not

15  done so, their "warranty" claims should be dismissed.

## V.    MR. GREGORIO'S NEW YORK WARRANTY CLAIMS FAIL

17       Plaintiff Gregorio's New York warranty claims should be dismissed for the

18  simple reason that Gregorio has failed to plead two basic elements of a New York

19  breach of warranty claim: privity (as to the implied warranty claim) and statutory

20  notice (as to the express warranty claim).  *See Mahoney v. Endo Health Sols.*, 2016

21  WL 3951185, at *5 (S.D.N.Y. July 20, 2016) (dismissing implied warranty claim

22  for lack of privity); N.Y. U.C.C. § 2-607(3)(a) (buyer must provide a seller of an

23  alleged breach of warranty "within a reasonable time" after the buyer discovers or

24  should have discovered the breach).

25       ***First***, there is no dispute that Gregorio's implied warranty claim fails for lack

26  of privity: Plaintiffs have chosen to abandon that claim rather than defend it.  (Opp.

27  at 21 n.7.)  That claim should be dismissed with prejudice.  *See*, *e.g.*, *Raymonde v.*

28  *Mirant Cal., LLC*, 2010 WL 366643, at *15 (N.D. Cal. Jan. 25, 2010) (dismissing

REPLY ISO DEFS.'
MOTION TO DISMISS
8:16-CV-1954-JLS-JCG

abandoned claims with prejudice).

**Second**, Plaintiffs' Opposition ignores a key requirement of notice under New York law: that plaintiffs must plead facts to show notice was given within a reasonable time after discovery of the alleged breach.  (Opp. at 21-23.)  As set out in Defendants' Opening Brief, courts regularly dismiss warranty claims under New York law where the plaintiffs failed to plead when they discovered the alleged breach and that notice was given within a reasonable time after the breach was discovered.  (Mot. 13-14.)  But Plaintiffs never address this issue—or explain what facts Mr. Gregorio might plead in an amended complaint.  Instead, Plaintiffs argue that their complaint itself should suffice as notice.  (*See* Opp. at 22.)  But nothing in the FAC shows that Gregorio's complaint constituted reasonable notice—*i.e.*, that he sent the complaint within a "reasonable" time after discovering the alleged breach.  (*See* Mot. at 13-14.)  In the FAC, Gregorio alleges he purchased the products "eight or nine" times over the last three years.  (FAC ¶ 9.)  But Gregorio says nothing about when in this "three-year" period he learned the Products did not provide the benefits he expected.  As currently pleaded, this claim must be dismissed.  *See, e.g.*, *Tomasino v. Estee Lauder*, 44 F. Supp. 3d 251, 261-62 (E.D.N.Y. 2014) (dismissing warranty claims where plaintiff failed to allege facts showing he provided reasonable notice); *Singleton v. Fifth Generation, Inc.*, 2016 WL 406295, at *12 (N.D.N.Y. Jan. 12, 2016) (dismissing warranty claim that did "not even allege when Plaintiff discovered the alleged breach").[4]

Plaintiffs' authorities require no other result.  (*See* Opp. at 22-23.)  In *Panda Capital Corp. v. Kopo Int'l*, 242 A.D.2d 690 (N.Y. App. Div. 1997), for example, the parties had been involved in ongoing contract disputes for three years before the plaintiff sued.  *Id*. at 691.  Under those particular circumstances—*i.e.*, where the

_____

[4] Plaintiffs also contend they complied with New York notice requirements by sending a CLRA demand letter.  (Opp. 21-22.)  But that letter was sent the day *after* Plaintiffs filed their complaint (*id*. at 21-23) and says nothing about Mr. Gregorio having discovered any alleged breach of warranty.

REPLY ISO DEFS.'
MOTION TO DISMISS
8:16-CV-1954-JLS-JCG

defendant was well aware of the plaintiff's grievances far in advance of the complaint—the court found that statutory notice had been satisfied. *Id.* at 692. And in *In re Ford Motor Co.E350 Van Prods. Liab. Litig.*, by the time the plaintiff sued, the defendant had been involved in years of multi-district litigation over allegedly defective vans. 2010 WL 2813788, at *1 (D.N.J. July 9, 2010). Under those circumstances, the court allowed a plaintiff to join existing litigation without separately providing notice. *Id.* at *72. But here, Mr. Gregorio's complaint was the first time he (or any of the other Plaintiffs) accused Defendants of any breach. And Plaintiffs' next case—*Silverstein v. R.H. Macy & Co.*, was issued in 1943 and dealt with notice requirements under the Personal Property Law that predates the U.C.C. (and was repealed in 1964). 40 N.Y.S.2d 916, 920 (App. Div. 1943); *see* N.Y. Per. Prop. Law § 130 (noting repeal in 1964).

Plaintiffs are correct that *Paulino v. Conopco*, 2015 WL 4895234, at *2 (E.D.N.Y. Aug. 17, 2015), says that New York's notice requirements should not be applied unreasonably. (Opp. at 21-22.) But in *Paulino*, the plaintiffs sent a warranty notice the year before filing the complaint. *Id.* No such notice has been sent here, and the facts as pleaded give no indication of when Mr. Gregorio discovered the alleged breach, much less that the "notice" he says was provided was given within a reasonable time after his discovery of the "breach." FAC Ex. 1 at 2 (CLRA Letter).

***Finally***, Plaintiffs argue that U.C.C. notice requirements do not apply to remote manufacturers like Defendants. (Opp. at 22-23.) Specifically, Plaintiffs contend New York and New Jersey adopted the same notice provisions of the U.C.C., and New Jersey does not apply them to remote manufacturers, such that the same is true in New York. (*Id.*) But it is New York's law, not New Jersey's, that applies—and as the authorities cited by Defendants demonstrate (which Plaintiffs neither address nor distinguish), multiple courts have interpreted New York's U.C.C. provisions to require that plaintiffs provide reasonable and timely notice to

1  the manufacturer.  *See In re Frito-Lay N. Am., Inc. All Natural Litig.*, 2013 WL

2  4647512, at *27 (E.D.N.Y. Aug. 29, 2013) ("Plaintiffs fail to allege in the First

3  Amended Complaint that they even provided sufficient notice ... let alone notice

4  within a reasonable time after discovery of a breach."); *Tomasino*, 44 F. Supp. 3d at

5  261-62 (dismissing implied and express warranty claims over efficacy of facial

6  cream in absence of allegation of notice); *Singleton*, 2016 WL 406295, at *12

7  (complaint did "not even allege when Plaintiff discovered the alleged breach").[5]

8      Because Mr. Gregorio has not pleaded facts showing that he provided

9  reasonable notice, his express warranty claims must be dismissed.

10  **VI.   MOUTHWASH AND TOOTHPASTE ARE NOT "SUBSTANTIALLY**

11      **SIMILAR"**

12      Mr. Gregorio's attempt to save his Mouthwash claims should be rejected too.

13  In an individual action, Defendants would be entitled to dismissal of Gregorio's

14  Mouthwash claims because he did not buy Mouthwash—he lacks the "requisite

15  pecuniary injury" to assert that claim.  *See, e.g.*, *Ivie v. Kraft Foods Glob., Inc*., 961

16  F. Supp. 2d 1033, 1046 (N.D. Cal. 2013).  In their Opposition, Plaintiffs contend

17  the Court should wait to address this issue until after class certification or allow

18  Gregorio to assert Mouthwash claims under the "substantial similarity" doctrine.

19  (Opp. at 7-10.)  Plaintiffs are wrong on both counts.  This is exactly the sort of issue

20  that should be resolved now, and the Toothpaste and Mouthwash are far too

21  different to qualify as "substantially similar."

22      ***First***, the Court should address this issue now.  If Plaintiffs seek to bring

23  ───────────────

24  [5] In any event, the New Jersey authorities Plaintiffs cite do not hold a plaintiff need
not provide notice within a reasonable time after discovery of a breach.  *Cipollone
v. Liggett Grp., Inc.* held that a defendant was not entitled to a directed verdict

25  because the plaintiff provided evidence that she brought suit promptly after learning
she had lung cancer.  683 F. Supp. 1487, 1496 (D.N.J. 1988).  Similarly, *Coyle v.

26  Hornell Brewing Co.* stated only that a plaintiff need not, under New Jersey law,
provide a remote manufacturer with *pre-suit* notice.  2010 WL 2539386, at *6

27  (D.N.J. June 15, 2010).  The same is true of *Ebin v. Kangadis Foods*, another case
dealing only with *pre-suit* notice under New Jersey law.  2014 WL 737878, at *2

28  (S.D.N.Y. Feb. 25, 2014).

REPLY ISO DEFS.'
MOTION TO DISMISS
8:16-CV-1954-JLS-JCG

their claims on behalf of a proposed New York subclass of Mouthwash purchasers, they must identify someone with standing to bring such claims now so that this person can be the proper subject of discovery.  In a class action, "litigation as to each subclass is treated as a separate lawsuit."  *Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981).  This means Plaintiffs cannot assert claims on behalf of a proposed New York or other class (or subclass) unless the proposed representative of the New York class (Gregorio) purchased the Mouthwash and has standing to represent the subclass in his own right.  *See, e.g., Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1067 (9th Cir. 2014) (denying certification for two subclasses because the sole named plaintiff was not a member of either subclass); *Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, 2016 WL 1048046, at *9 (N.D. Cal. Mar. 11, 2016) (plaintiff could not represent subclass who signed contract that he did not sign); *Major v. Ocean Spray Cranberries, Inc.*, 2013 U.S. Dist. LEXIS 81394, at *8-14 (N.D. Cal. June 10, 2013) ("the typicality requirement has not been met" where proposed class encompasses products plaintiff did not purchase).  If Plaintiffs intend to bring claims on behalf of a subclass of New York Mouthwash purchasers, they should be required to identify a named plaintiff who is a member of that putative class.[6]

    ***Second***, Plaintiffs do not mention, much less distinguish, the cases Defendants cited in their Motion illustrating how the many ways these Products differ—from physical properties to manner of use to packaging to formulation to labeling statements—are exactly the kinds of differences that have precluded a

---

[6] For this reason, it is not relevant that Ms. Barber, a California resident, purchased the Mouthwash.  (Opp. at 8 n.3.)  Whether or not any other plaintiffs have standing, Mr. Gregorio lacks standing to assert Mouthwash claims and his Mouthwash claims should be dismissed.  *Berger*, 741 F.3d at 1067 (a putative class representative cannot represent a subclass if he lacks individual standing in his own right). Further, Plaintiffs have already admitted that New York law would govern the warranty claims of any New York subclass.  (Opp. at 18.)  So Plaintiffs' assertion that "Plaintiff Burke can bring claims under California consumer protection law" (Opp. at 8 n.3) is not relevant—Barber lacks standing to bring the claims under New York law currently pleaded in the FAC.

REPLY ISO DEFS.'
MOTION TO DISMISS
8:16-CV-1954-JLS-JCG

finding of substantial similarity in analogous circumstances.  (*Compare* Mot. at 7-9 *with* Opp. at 7-9); *see also, e.g.*, *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 870 (N.D. Cal. 2012) (allegedly "fake" white chocolate baking chips, drinking powders, and wafers were not substantially similar).[7]

  ***Third***, the fact that the Products' labels use some of the same language (Opp. at 14-15) does *not* mean the Products themselves are "substantially similar."  In their Opposition, Plaintiffs include an extensive chart of the Products' labels, and argue that overlapping language in some parts of those labels means the Mouthwash and Toothpaste are substantially similar.  (Opp. at 8-10.)  But the labels are not the only aspect of the Products at issue—what also matters is whether the Products can and do provide the benefits advertised.  And here, the composition of the Products is quite different—as set out in Defendants' opening brief, the products use different types of peroxide,[8] different concentrations of peroxide, and have a wide variety of other different ingredients.  (Mot. at 7.)  They are also physically different (paste vs. mouthwash) and are used in different ways.  Under these circumstances, the Products are ***not*** substantially similar: "where the actual composition or appearance of the product is legally significant to the claim at issue, the consumer may only be allowed to pursue claims for products with identical product composition and/or appearance."  *Ang v. Bimbo Bakeries*, 2014 WL 1024182, at *8 (N.D. Cal. Mar. 13, 2014); *see also Dysthe v. Basic Research, LLC*, 2011 WL 5868307, at *5 (C.D. Cal. June 13, 2011) (supplements with similar

---

[7] *See also Granfield v. NVIDIA Corp.*, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012) (plaintiff lacked standing to assert claims regarding graphics card models she did not purchase); *Larsen v. Trader Joe's Co.*, 2012 WL 5458396, at *5 (N.D. Cal. June 14, 2012) (plaintiffs could not have suffered particularized injury for unpurchased products); *Allen v. Hylands, Inc.*, 2012 WL 1656750, at *5 (C.D. Cal. May 2, 2012) (no standing to "assert claims arising out of any alleged false or misleading statements" relating to unpurchased homeopathic products); *see also* Mot. at 6 n.3 (citing numerous additional authorities).

[8] Plaintiffs argue there is no distinction between "urea peroxide" and "hydrogen peroxide" because "hydrogen peroxide is released from urea peroxide when combined with saliva."  (*Id.* at 10).  That contention proves the point: the Products have different physical properties and operate in different ways.

active ingredient but otherwise different compositions not "substantially similar").[9]
Here, the advertising and labeling for the Products is only one aspect of the claims.
Their ingredients, how they are actually formulated, and their methods of use all
bear on the Products' efficacy and benefits—under the circumstances, the
Mouthwash and Toothpaste are not so "similar" that Gregorio should be allowed to
sue over a product he never bought. *See, e.g.*, *Stephenson v. Neutrogena Corp.*,
2012 WL 8527784, at *1-2 (N.D. Cal. July 27, 2012) (dismissing claims for
unpurchased facial care products where an "individualized factual inquiry" would
be necessary to determine whether the products were in fact substantially similar);
*Smedt v. Hain Celestial Grp., Inc.*, 2014 WL 2466881, at *7 (N.D. Cal. May 30,
2014) (dismissing claims where court could not determine if unpurchased products
were substantially similar to purchased products on the face of the pleadings).

## VII.   PLAINTIFFS CANNOT SUE OVER ADS THEY NEVER SAW

　　　　Plaintiffs' attempt to save their allegations about ads they never saw should
also be rejected.  In the FAC, Plaintiffs contend Defendants' "misleading"
advertising included online ads and a television commercial that aired for a few
nights in 2011.  (FAC ¶¶ 22-24.)  But Plaintiffs only allege reliance on the product
labels themselves—they never personally saw or relied on any of the non-label ads
set out in the FAC.[10]  When faced with virtually identical circumstances—*i.e.*,

---

[9] The cases Plaintiffs cite allowing claims over unpurchased products are
distinguishable.  (Opp. at 7-9.)  There the products were far more similar (e.g.,
different flavors of ice cream) and, critically, the claims in those cases had little or
nothing to do with efficacy, making the products' specific ingredients less
important.  *See*, *e.g.*, *Astiana v. Dreyer's Grand Ice Cream*, 2012 WL 2990766, at
*13 (N.D. Cal. July 20, 2012) (different flavors of "all natural" ice cream); *Koh v.
S.C. Johnson*, 2010 WL 94265, at *3 (N.D. Cal. Jan. 6, 2010) (plaintiffs claimed
that shared ingredients in purchased and unpurchased products were not
environmentally friendly as advertised); *Ogden v. Bumble Bee Foods*, 292 F.R.D.
620, 621-26 (N.D. Cal. 2013) (claim that seafood was "rich in omega-3s")

[10] *See*, *e.g.*, FAC ¶ 7 ("Barber purchased Rembrandt Deeply White + peroxide
toothpaste based on the "Deeply White" name of the toothpaste, as well as claims
on the label ...."); *id.* ¶ 8 ("Burke purchased the Rembrandt Deeply White Products
based on claims on the labels ...."), *id.* ¶ 9 ("Gregorio purchased Rembrandt
Deeply White + peroxide toothpaste based on statements on the labels ....").

REPLY ISO DEFS.'
MOTION TO DISMISS
8:16-CV-1954-JLS-JCG

where Plaintiffs purport to base claims *in part* on statements and claims they never personally saw—courts regularly dismiss or strike such claims. *Wilson*, 961 F. Supp. 2d at 1143 (dismissing claims as to a website plaintiff never visited, while permitting claims based on product labels); *Mohamed*, 2015 WL 12469107, at *2, *3, *5 (dismissing false advertising claims "to the extent they challenge materials she has not alleged she read or relied upon" while allowing claims based on label).

Plaintiffs argue that since they have standing to sue based on their reliance on product labels, this "ends the standing inquiry."[11]  (Opp. at 13.)  Not so.  In fact, many of the authorities Defendants cited involved the precise situation at issue here, where the plaintiffs had standing to pursue false advertising claims over product labels but had never seen the other ads and marketing materials described in their complaints.  *See, e.g.*, *Bruton v. Gerber Prod. Co.*, 961 F. Supp. 2d 1062, 1091 (N.D. Cal. 2013) (allowing claims over labels, but dismissing claims based on website because "Bruton does not allege that she ever actually viewed any of the alleged misrepresentations at the Gerber website").[12]

In *In re Ferrero Litigation*, for example, the plaintiffs alleged Ferrero's Nutella website was misleading, even though the named plaintiffs only personally

---

[11] The cases Plaintiffs cite for this proposition make only the unremarkable point that, if a named plaintiff successfully demonstrates he has Article III standing to bring a claim in his own right, he may represent those similarly situated. *Sosna v. Iowa*, 419 U.S. 393, 403 (1975) (noting "a litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court"); *In re VeriSign, Inc.*, 2005 WL 88969, at *4-5 (N.D. Cal. Jan. 13, 2005) (a named plaintiff does not need to establish at the pleadings stage that all class members were injured by a defendant's conduct in the same way).

[12] *See also Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (2010) (no reliance on website statements where complaint did not allege the plaintiff "ever visited" website); *Gale v. IBM*, 781 N.Y.S.2d 45, 47 (N.Y. App. Div. 2004) (dismissing GBL § 349 where no allegation plaintiffs saw any of defendants' non-label statements and thus "could not have been the cause of [their] injury, there being no connection between the deceptive act and the plaintiff's injury."); *Ivie*, 961 F. Supp. 2d at 1047 (dismissing claims over website where plaintiff "does not sufficiently plead reliance on these specific aspects of the website when purchasing any particular product"); *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 (2011) (a plaintiff must "demonstrate actual reliance on the allegedly deceptive or misleading statements").

1    relied on Nutella's label and television ads in purchasing Nutella.  794 F. Supp. 2d

2    1107, 1112 (S.D. Cal. 2011).  And, as here, because the "[p]laintiffs did not

3    actually rely on the statements on Nutella's website before making their purchases,"

4    they "lack[ed] standing to challenge these statements under the UCL, FAL, and

5    CLRA" though their claims over the labels would still proceed.  *Id.*  Likewise, in

6    *McCrary v. Elations Co., LLC*, the plaintiff "allege[d] that the Elations website

7    contains various misrepresentations" about the products' efficacy, "but the SAC

8    [did] not allege that he looked at or relied on anything on Defendant's website

9    before purchasing [the product.]"  2013 WL 6403073, at *7-*11 (C.D. Cal. July 12,

10   2013).  Again, even though the label-based claims would proceed, the court

11   dismissed the plaintiffs' claims over the website because the "[p]laintiff did not

12   actually rely on any website statements and does not have standing to bring claims

13   based on those statements."  *Id.*

14        Thus, Plaintiffs' elaborate arguments in support of their claims are an

15   irrelevant distraction.  (*E.g.*, Opp. 17-18 (discussing "substantial similarity"

16   analyses in *Wilson* and *Ivie*, without addressing those cases' dismissal of unread ad

17   claims on standing grounds.)  Here, Defendants have not "conflate[d] Article III

18   standing with the requirements of Rule 23."  (Opp. at 13.)[13]  As set out above,

19   multiple courts have done precisely what the Court should do here: dismiss and/or

20   strike claims, at the pleading stage, to the extent they are based on ads and other

21   non-label statements that plaintiffs never saw or relied upon.

_____

22   [13] The authorities Plaintiffs cite primarily address the "substantial similarity"
     analysis for unpurchased products (discussed *supra*), and do not squarely address
23   standing to sue over ads the plaintiff never saw.  *See, e.g.*, *Dorfman*, 2013 WL
     5353043, at *8 ("The Court finds that Plaintiff has alleged sufficient similarities
24   between the ingredients and represented health benefits of Cosamin DS and
     Cosamin ASU[.]"); *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524 (C.D. Cal.
25   2011) (deferring unpurchased products question).  *Cardenas v. NBTY, Inc.*, 870 F.
     Supp. 2d 984, 991 (E.D. Cal. 2012) arguably comes closer, but it too principally
26   concerns the substantial similarity of products and does not grapple with the
     separate question of statements the plaintiffs have never seen.  The only case
27   Plaintiffs cite that actually supports their position is *Hunter v. Nature's Way Prods.
     LLC*, 2016 WL 4262188, at *15 (S.D. Cal. Aug. 12, 2016).  But as set out above
28   (and in Defendants' Opening Brief), the great weight of authority is to the contrary.

REPLY ISO DEFS.'
MOTION TO DISMISS
8:16-CV-1954-JLS-JCG

Next, Plaintiffs contend they need not personally plead or prove personal reliance in any event because the "misrepresentations and false statements [at issue] are part of an extensive and long term advertising campaign."  (Opp. 17 (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009)).  But the language Plaintiffs cite from *Tobacco II* has no application here.  ***First***, Plaintiffs do not actually allege Defendants engaged in any "extensive and long term advertising campaign," much less that they were exposed to that campaign and induced to purchase any of the Products.  Thus, "*Tobacco II* is distinguishable from this action because"—just as here—"although [the plaintiffs] argue that they were exposed to a long-term advertising campaign in their opposition, Plaintiffs never allege this in their consolidated complaint."  *Ferrero*, 794 F. Supp. 2d at 1112; *see also id.* ("It is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss."); *accord McCrary*, 2013 WL 6403073, at *8.

***Second***, *Tobacco II* does not support the proposition that reliance on a product label makes each and every television commercial or online advertisement in the defendant's broader advertising campaign actionable.  (Opp. 16-18.)  In fact, the court in *Tobacco II* made very clear named plaintiffs were required to plead and prove individual reliance under the UCL as amended by Proposition 64.  46 Cal. 4th at 326.  In *Tobacco II*, the court held that the plaintiff was not required to identify the specific ads relied on because of the particular facts at issue: there, the defendants had engaged in "a decades-long campaign of deceptive advertising and misleading statements about the addictive nature of nicotine and the relationship between tobacco use and disease."  *Id.* at 306.  There is nothing comparable at issue here—Plaintiffs identify only a single television commercial they allege ran for a handful of evenings six years ago.  (FAC ¶ 24 n.3.)  They do not allege facts that come close to the long, pervasive effort at issue in *Tobacco II*.  *See, e.g.*, *Pfizer Inc. v. Superior Court*, 182 Cal. App. 4th 622, 632 (2010) ("*Tobacco II* does not stand for the proposition that a consumer who was never exposed to an alleged false or

REPLY ISO DEFS.'
MOTION TO DISMISS
8:16-CV-1954-JLS-JCG

misleading advertising or promotional campaign is entitled to restitution."); *Sevidal v. Target Corp.*, 189 Cal. App. 4th 905, 926-28 (2010) (named plaintiffs lacked standing to challenge "additional information" page on Target.com that they and 83% of class members did not visit).[14]

     ***Finally***, Plaintiffs argue their references to internet or television ads should survive because they are not "immaterial" under Rule 12(f).  This argument should also be rejected.  (Opp. at 11-12.)  Plaintiffs miss the point—whether such statements might be discoverable or relevant for other purposes is for another day.  At this stage, the question is whether Plaintiffs have standing to pursue claims based on those statements—and as multiple courts have held, they do not.  *See Mohamed*, 2015 WL 12469107, at *2, *3, *5; *Wilson*, 961 F. Supp. 2d at 1143; *Ivie*, 961 F. Supp. 2d at 1047; *McCrary*, 2013 WL 6403073, at *7-*11; *Bruton*, 961 F. Supp. 2d at 1091; *Ferrero*, 794 F. Supp. 2d at 1112.

## VIII.  <u>PLAINTIFFS' OPPOSITION CONFIRMS THAT THEIR NATIONWIDE "WARRANTY" CLASS SHOULD BE STRICKEN</u>

     As is set out in Defendants' Opening Brief, courts regularly dismiss or strike nationwide class allegations on the pleadings where (as here) the laws of many different states will apply to the claims of the customers in the proposed "class." (Mot. at 14-18 (discussing application of *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012)).  In response, Plaintiffs make a series of generic points: *e.g.*, that sometimes choice-of-law issues can be deferred until class certification

---

[14] Plaintiffs' position that they need not plead reliance on non-label statements because Defendants engaged in a marketing "campaign" is not supported by Plaintiffs' other authorities either.  (Opp. at 16-18.)  *Prata v. Superior Court*, 91 Cal. App. 4th 1128, 1143 (2001), predates Proposition 64's revision of the UCL to include injury-in-fact standing requirements.  *In re Oreck* simply addresses whether, under Rule 9(b), a named plaintiff must allege with particularity every advertisement she read and relied upon—critically, the complaint in that case alleged "which type of advertising (infomercial, online, etc.)" was viewed by each plaintiff. 2012 WL 6062047, at *15 (C.D. Cal. Dec. 3, 2012).  And while the plaintiff in *Morrison* could not recall which specific commercial she saw, her complaint clearly alleged (unlike the FAC here) exposure to a variety of marketing statements, including a late-night infomercial.  *Morrison v. TriVita, Inc.*, 2013 WL 1148070, at *5 (S.D. Cal. Mar. 19, 2013).

(Opp. at 2-3), or that problems with state-by-state variations can sometimes be addressed with subclasses.  (*Id.* at 4.)  Those generalized arguments have little to do with *this* case—particularly since Plaintiffs have conceded the laws of each class member's home state will apply to their claims, making "further discovery" largely (if not entirely) irrelevant to the choice-of-law issue.  (Opp. at 18.)[15]

As a preliminary matter, Plaintiffs' assertion that Rule 12 motions directed at class allegations are "an improper attempt to circumvent Rule 23" should be rejected.  (Opp. at 3.)  To be sure, such motions are not ***always*** appropriate.  But whether such a motion is appropriate in a particular case depends on that case's facts—and courts have not hesitated to strike nationwide class allegations on the pleadings, where, as here, the pleadings show a nationwide class cannot be maintained.  *See, e.g., Glenn*, 2016 WL 3621280, at \*4 (granting motion to strike nationwide class allegations and noting that "'[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim,'" quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)); *Frenzel v. Aliphcom*, 2014 U.S. Dist. LEXIS 177880, at \*12 (N.D. Cal. Dec. 29, 2014) ("[T]he principle articulated in *Mazza* applies generally and is instructive even when addressing a motion to dismiss[.]").  Here, Plaintiffs seek to bring a "nationwide warranty class" that is improper as a matter of law.  That is precisely the sort of issue that can and should be addressed on the pleadings by a motion to strike.  *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds,* 510 U.S. 517 (1994) (motions to strike serve the purpose of saving the time and resources that would be wasted litigating spurious issues).

---

[15] Plaintiffs try to distinguish *Frezza v. Google Inc.*, 2013 WL 1736788 (N.D. Cal. Apr. 22, 2013), because the named plaintiff in that case did not reside in California. (Opp. at 4.)  But that makes no difference here, because (unlike in *Frezza*) Plaintiffs here do not argue California law should apply nationwide.  *See also* Opp. at 5 (arguing *Davison v. Kia Motors Am. Inc.*, 2015 WL 3970502 (C.D. Cal. June 29, 2015), should be disregarded because that case involved an effort by a non-California resident to bring CLRA claims nationwide).

1    For example, in both *Route v. Mead Johnson Nutrition Co.* and *Rikos v.*
2  *Procter & Gamble Co.*, the courts struck nationwide warranty claims under
3  circumstances that are directly analogous to the allegations Plaintiffs make here.  In
4  *Route*, the court rejected a proposed nationwide warranty class of all purchasers of
5  the defendant's allegedly misbranded baby food.  *Route,* 2013 WL 658251, at *7-9
6  (C.D. Cal. Feb. 21, 2013) ("Plaintiff first argues that the Court should defer ruling
7  on this issue until the class certification stage, but this argument fails to
8  acknowledge that where the matter is sufficiently obvious from the pleadings, a
9  court may strike class allegations.").  And in *Rikos*, the court struck a proposed
10  nationwide class of consumers who bought digestive aids.  2012 WL 641946, at *5-
11  7 (S.D. Ohio Feb. 28, 2012) (applying California choice-of-law rules and striking
12  nationwide class due to differences in state warranty laws); *see also Sanders v.*
13  *Apple*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (dismissing nationwide warranty
14  claims on a Rule 12 motion because "[c]ourts routinely hold that … warranty
15  claims are difficult to maintain on a nationwide basis and rarely are certified").

16    In their Opposition, Plaintiffs urge the Court to defer resolution of this issue
17  until "relevant facts of the case have been explored during discovery."  (Opp. at 4,
18  5.)  But they identify no such "relevant facts" that could alter the outcome of the
19  analysis under *Mazza*.  (Opp. at 5.)  Nor can they.  To be sure, discovery could, in
20  some cases, reveal facts that could justify the application of a single state's laws to
21  a nationwide class—as might be the case where all customers signed a service or
22  other agreement with a choice-of-law provision.  But no such facts are at issue here,
23  because Plaintiffs have admitted the substantive laws of each customer's home state
24  will apply to their claims.  (Opp. at 18.)  Discovery is not always necessary to
25  resolve choice-of-law issues—in *Mazza* itself, "the Ninth Circuit determined,
26  without conducting a factual analysis, that variations in the elements required to
27  satisfy a cause of action constituted material differences among the statutes."
28  *Rikos*, 2012 WL 641946, at *6 (citing 666 F.3d at 591).  While further discovery

REPLY ISO DEFS.'
MOTION TO DISMISS
8:16-CV-1954-JLS-JCG

may sometimes be warranted, the facts alleged here show the nationwide "warranty" class should be stricken now.

Next, Plaintiffs contend the different state laws that they admit will apply do not vary in any material way. This argument can be rejected. As set out below, in at least four key areas the states' warranty laws will vary in material ways.

**Notice:** Plaintiffs claim that since they provided pre-suit notice, that factor "is immaterial." (*Compare* Mot. at 16 *with* Opp. at 6.) But, of course, their so-called "pre-suit" notice was dated *after* they filed their lawsuit. *Compare* Dkt. 1 (Compl. dated Oct. 26, 2016) *with* Dkt. 18, Ex. A (CLRA demand letter dated Oct. 27, 2016). For states requiring adequate notice *before* a complaint is filed before bringing an express or implied warranty claim, Plaintiffs' *post*-suit notice will not suffice. *See, e.g.*, *Darisse v. Nest Labs, Inc*., 2016 WL 4385849, at *12-*15 (N.D. Cal. Aug. 15, 2016) (California, Arkansas, North Carolina, Texas, and Wyoming all generally require pre-suit notice to manufacturers). Moreover, many states require that notice be given fairly quickly after discovery of the breach. *Ingle v. Marked Tree Equip. Co*., 428 S.W.2d 286, 290 (Ark. 1968) (finding a delay of two months unreasonable); *Mariner Water Renaturalizer, Inc. v. Aqua Purification Sys., Inc*., 665 F.2d 1066, 1069 (D.C. Cir. 1981) (delay of five to eight weeks in notification held untimely); *Tomasino*, 44 F. Supp. 3d at 261-62 (dismissing implied and express warranty claims where plaintiff failed to allege facts indicating he provided reasonable notice). Whether Plaintiffs' "notice" qualifies as "pre-suit" notice has nothing to do with whether any of the putative class members provided notice within a "reasonable" time after discovering an alleged breach.

**Privity:** Plaintiffs do not deny state warranty laws differ in material ways as to privity. (*Compare* Mot. at 17 *with* Opp. at 6.) Nor could they—Plaintiffs were forced to withdraw Gregorio's New York implied warranty claim for lack of privity. (Opp. at 21 n.7.) Instead, Plaintiffs argue variations in privity can be cured through subclasses of "grouped" states. But, of course, they have not pleaded these

as-yet-unidentified subclasses.  They also have not explained how the state warranty laws underlying such subclasses would be identical in every material respect such that they could be "grouped."  *Berger*, 741 F.3d at 1067 (subclass could not be certified where representative not a member of the subclass); *Circle Click*, 2016 WL 1048046, at *9 (same).[16]

**Statutes of limitations:**  Here, the different states apply statutes of limitations that vary by up to three years.  (Mot. at 18.)  In response, Plaintiffs cite *Schramm v. J.P. Morgan Chase Bank, NA*, 2011 WL 5034663, at *10 (C.D. Cal. Oct. 19, 2011), for the proposition that "differences in the application of a statute of limitations should not preclude certification of a class action."  (Opp. at 7).  But that case dealt only with the application of a ***single*** statute of limitations (California's), not the ***fifty*** different statutes of limitations Plaintiffs propose to apply here.  Moreover, Plaintiffs' contention these variations in substantive recovery periods are "immaterial and can be readily resolved by limiting the class to the shortest limitations period" (Opp. at 7) is troubling—Plaintiffs appear to suggest they will abandon a subset of consumers and exclude them from any class in order to ensure other class members' claims might proceed.  This highlights the need for Plaintiffs to identify named Plaintiffs who are actually members of the (yet to be identified) subgroups and "subclasses" they apparently intend to pursue.

**Reliance**:  Finally, Plaintiffs suggest differences in states' reliance requirements are immaterial because the named Plaintiffs allege they individually relied on package representations in this case.  (Opp. at 6.)  But just because *these* Plaintiffs can meet a higher burden for reliance has nothing to do with what other class members might be able to show.  If a strong showing of reliance is required under the applicable law, "the Court would be forced to engage in individual

---

[16] Plaintiffs point to *Melgar v. Zicam LLC*, 2016 WL 1267870 (E.D. Cal. Mar. 31, 2016), certifying a 10-state warranty class, as an example of how "grouping" might work.  (Opp. at 4).  But no such "grouping" has been proposed here, and whether Plaintiffs might be able to plead or certify some other kind of class is not at issue.  At issue is whether their *current* nationwide allegations are valid (they are not).

REPLY ISO DEFS.'
MOTION TO DISMISS
8:16-CV-1954-JLS-JCG

inquiries of each class member with respect to materiality of the statement" and "what caused the member to make the purchase." *Sanders*, 672 F. Supp. 2d at 991. And here, the reliance standards and requirements that will apply vary considerably among the different states. *See, e.g.*, *Coleman v. Bos. Sci. Corp.*, 2011 WL 3813173, at *4 (E.D. Cal. Aug. 29, 2011) (California) (reliance required absent privity); *CBS Inc. v. Ziff-Davis Publ'g Co.*, 75 N.Y.2d 496, 503-06 (1990) (New York) (express warranty must form basis of bargain but buyer need not believe truth); *Baughn v. Honda Motor Co.*, 727 P.2d 655, 669 (Wash. 1986) (Washington) (no reliance required but buyer must be aware of warranty).

Plaintiffs also suggest Defendants have not "exhaustively" detailed the differences between state warranty laws.  (Opp. at 5.)  This argument can also be rejected.  Here, Defendants identified over a dozen ways state warranty laws vary in critical, outcome-determinative ways (*see Mazza*, 666 F.3d at 590)—and Plaintiffs' response is that Defendants have not shown them ***all***.  That more differences may exist is not a valid basis for allowing their overbroad class allegations to stand. Simply put, even a preliminary analysis of state warranty laws indicates individual questions of law will predominate, such that Plaintiffs' warranty claims cannot be brought on behalf of a nationwide class.  *Rikos*, 2012 WL 641946, at *5.

## IX.    **CONCLUSION**

Defendants respectfully request that the Court grant their Motion in full and dismiss or strike the portions of the FAC that are invalid as a matter of law.

Dated:  February 24, 2017

RICHARD B. GOETZ
MATTHEW D. POWERS
HANNAH Y. CHANOINE
O'MELVENY & MYERS LLP

BY: /s/ MATT POWERS
        MATTHEW D. POWERS
Attorneys for Defendants

REPLY ISO DEFS.'
MOTION TO DISMISS
8:16-CV-1954-JLS-JCG